Judge RYAN
delivered the opinion of the Court.
Contrary to his pleas, a panel of officer and enlisted members, sitting as a general court-martial, convicted Appellee of consensual sodomy and of adultery, in violation of Articles 125 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925, 934 (2006). The adjudged and approved sentence provided for a bad-conduct discharge and reduction to the grade of E-l. The United States Air Force Court of Criminal Appeals (AFCCA) determined that a bad-conduct discharge was inappropriately severe under the facts of the case. On certification under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2006), the Judge Advocate General of the Air Force (TJAG) asked us to hold that the AFCCA’s action was an impermissible exercise of appellate clemency.[1] In addition, on December 15, 2011, we granted Appellee’s cross-petition to determine the following issue:
WHETHER A CONTESTED ADULTERY SPECIFICATION THAT FAILS TO EXPRESSLY ALLEGE AN ARTICLE 134 TERMINAL ELEMENT BUT *211 THAT WAS NOT CHALLENGED AT TRIAL STATES AN OFFENSE.[2]
Appellee did not object to the form of the adultery specification at trial. Consistent with our recent decisions in United States v. Fosler, 70 M.J. 225 (C.A.A.F.2011), and United States v. Ballan, 71 M.J. 28 (C.A.A.F. 2012), we hold that it was error to omit the terminal element of Article 134, UCMJ, from the adultery specification. Because the law at the time of trial was settled and clearly contrary, it is enough that the error is plain now, and the error was forfeited rather than waived. See United States v. Harcrow, 66 M.J. 154, 156-58 (C.A.A.F.2008). Applying the remainder of the plain error test, we further hold that, under the particular facts of this case, Appellee has shown material prejudice to a substantial right — his right to notice under the Fifth and Sixth Amendments. Given that we are dismissing the finding of guilty to the Article 134, UCMJ, adultery charge, and returning the record of trial to TJAG for remand to the AFCCA for reassessment or, if necessary, for ordering a rehearing on the sentence, we do not reach the certified issue.
I. FACTS
The events relevant to the decisional issue in this ease relate to a sexual encounter between Appellee, who was married at the time, and AEH, a family friend of Appellee’s and the wife of a deployed airman. Relative to this incident, the Government referred the following charges: (1) one charge and one specification of rape, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2006); (2) one charge and one specification each of adultery and wrongfully communicating a threat, violations of Article 134, UCMJ; and (3) one additional charge and one specification of forcible sodomy on divers occasions, in violation of Article 125, UCMJ.[3] As charged, neither the adultery specification nor the communicating a threat specification alleged the terminal element of Article 134, UCMJ.
At the close of the Article 39(a), 10 U.S.C. § 839(a) (2006), session, the parties agreed to a slightly modified charge sheet, admitted as the “flyer,” which still did not allege the terminal element for the Article 134, UCMJ, specifications. Appellee pleaded not guilty to the charges and specifications as described in the flyer. There was no mention of the terminal element of the Article 134, UCMJ, offenses during the Article 39(a), UCMJ, session, during opening statements, or at any point up until the military judge provided the parties with his draft panel instructions. In these instructions, which were provided to the panel, the military judge defined clauses 1 and 2 of the terminal element and listed it as a necessary element of each Article 134, UCMJ, offense.
Throughout the proceedings, the Government’s theory of guilt was that Appellee had forcibly raped and sodomized AEH. Even during closing arguments, the Government made only the briefest mention of the adultery charge and specification and at no point referenced the terminal element of Article 134, UCMJ.
After deliberation, the panel convicted Ap-pellee of adultery, in violation of Article 134, UCMJ, and of consensual sodomy, as a lesser included offense of the Article 125, UCMJ, forcible sodomy charge. The panel found Appellee not guilty of rape and forcible sodomy. Appellee’s sentence, which the convening authority approved, was a bad-conduct discharge and reduction to the grade of E-l.
As relevant to the certified issue, the AFC-CA found that Appellee’s crimes were “aggravated by the fact that they were committed: (1) in base housing; (2) with the spouse of a deployed service member; and (3) at a time when he was married and the father of three minor children.” United States v. Humphries, No. ACM 37491, 2010 CCA LEXIS 236, at *7, 2010 WL 2266324, at *2 (A.F.Ct.Crim.App. May 24, 2010) (unpublished). Nonetheless, it determined that “given the consensual nature of his crimes, *212 an unsuspended punitive discharge [was] inappropriately severe.” 2010 CCA LEXIS 236, at *8, 2010 WL 226634, at *2. While there is additional procedural history relevant to the certified issue, it is not relevant to the decisional issue in this case.
II. THE ARTICLE 134, UCMJ, ADULTERY SPECIFICATION
“Whether a specification is defective and the remedy for such error are questions of law, which we review de novo” Ballan, 71 M.J. at 33 (citing United States v. Crafter, 64 M.J. 209, 211 (C.A.A.F.2006); United States v. Girouard, 70 M.J. 5, 10 (C.A.A.F. 2011)).
A. Error
The alleged error in this case, as in Ballan and Fosler, is that the Article 134, UCMJ, specification was defective because it failed to allege the terminal element of that offense. See id. at 34; Fosler, 70 M.J. at 232-33. As in those cases, the specification at issue here was legally sufficient at the time the case was referred (February 13, 2009) and tried (March through May, 2009) and is “problematic today only because of intervening changes in the law.” Ballan, 71 M.J. at 34 n. 4 (citing Fosler, 70 M.J. at 232; United States v. Mayo, 12 M.J. 286, 293-94 (C.M.A.1982)). Under current law, “the terminal element of Article 134, UCMJ, like any element of any criminal offense, must be separately charged and proven.” Id. at 33. And, “regardless of context, it is error to fail to allege the terminal element of Article 134, UCMJ, expressly or by necessary implication.” Id. at 34; see also Fosler, 70 M.J. at 232 (“The Government must allege every element expressly or by necessary implication, including the terminal element.”). Although Appellee did not object to the defective specification at trial, this is hardly surprising, as any such objection would have been futile based on the state of the law at the time of trial. Where the law was settled at the time of trial and has subsequently changed, we apply the law as it exists today. See Girouard, 70 M.J. at 11 (“Given ‘this legal and factual context, defense counsel’s trial strategy could not be considered an intentional relinquishment or abandonment’ of a known right.” (quoting Harcrow, 66 M.J. at 158)).
B. Applicable Test
i.
The existence of error alone does not dictate that relief in the form of a dismissal is available. While a specification that fails to properly allege an element of a charged offense is defective, and while such a defect affects constitutional rights, it does not constitute structural error subject to automatic dismissal. See Girouard, 70 M.J. at 11; see also Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (“[W]e have found an error to be ‘structural,’ and thus subject to automatic reversal, only in a ‘very limited class of cases.’ ” (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997))).
ii.
Nor does the apparently straightforward language of Rule for Courts-Martial (R.C.M.) 907(b)(1)(B) — which provides that “[a] charge or specification shall be dismissed at any stage of the proceedings if ... [t]he specification fails to state an offense” (emphasis added) — survive the erosion of the legal basis for its existence and thus mandate automatic dismissal of a defective specification. When this R.C.M. provision was enacted, it was based on the then-existing version of Federal Rules of Criminal Procedure 12(b)(2) and 34. See Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app. 21 at A21-56 (2008 ed.) (MCM); see also Fed.R.Crim.P. 12(b)(1), (2) advisory committee’s note (1944 adoption) (establishing a set of objections and defenses, including “failure of an indictment or information to state an offense,” which if not raised by motion were nonetheless not waived). At that time, in accordance with Supreme Court precedent, where an indictment was found defective for failing to list all elements of an offense, it was necessarily dismissed on jurisdictional grounds (regardless of when the error was raised). Ex parte Bain, 121 U.S. 1, 13-14, 7 S.Ct. 781, 30 L.Ed. *213 849 (1887) (holding that the lower court lacked jurisdiction to render judgment due to defects in the indictment). Jurisdictional requirements were even more stringent in the military context, where failure to allege a “service connection” stripped the military court of jurisdiction and mandated dismissal. O’Callahan v. Parker, 395 U.S. 258, 272-73, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); see also Relford v. Commandant, 401 U.S. 355, 367-69, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971) (listing the factors to be considered in the context of the “ ‘service-connected’ test”); MCM ch. XII para. 68b (1969 rev. ed.) (“If the court lacks jurisdiction or if the charges fail to allege any offense under the code, the proceedings are a nullity.”); United States v. Alef, 3 M.J. 414, 416 (C.M.A.1977); United States v. Sims, 2 M.J. 109, 112 (C.M.A.1977); United States v. Hedlund, 2 M.J. 11, 13 (C.M.A.1976).
In more recent history, however, “[b]e-cause the consequences that attach to the jurisdictional label may be so drastic,” the Supreme Court has “tried in recent cases to bring some discipline to the use of this term.” Henderson v. Shinseki, — U.S. —, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011). It has “urged that a rule should not be referred to as jurisdictional unless it governs a court’s adjudicatory capacity, that is, its subject-matter or personal jurisdiction. Other rules, even if important and mandatory ... should not be given the jurisdictional brand.”[4] Id. at 1202-03 (internal citations omitted).
Moreover, the Supreme Court overtly reversed itself with respect to the effect on jurisdiction of indictments that are defective because they fail to allege elements, see, e.g., United States v. Cotton, 535 U.S. 625, 631-32, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (overruling Bain, 121 U.S. 1, 7 S.Ct. 781, “[ijnsofar as it held that a defective indictment deprives a court of jurisdiction”), and those that are defective because they fail to allege a “service connection.” Solorio v. United States, 483 U.S. 435, 450-51, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987) (overruling O’Callahan, 395 U.S. 258, 89 S.Ct. 1683, and holding that court-martial jurisdiction depends solely on the accused’s status as a member of the armed forces). Instead, the Court subjected such error to a plain error analysis. Cotton, 535 U.S. at 631-32, 122 S.Ct. 1781.
iii.
This Court’s precedent is consistent with the limits set by the Supreme Court on the application of structural error and its holding with respect to the nonjurisdictional status of defective specifications. A defective specification does not constitute structural error or warrant automatic dismissal. An accused’s claim that a charge fails to allege all elements of an offense can be raised at any time during court-martial or appellate proceedings. See R.C.M. 907(b)(1)(B). However, where defects in a specification are raised for the first time on appeal, dismissal of the affected charges or specifications will depend on whether there is plain error—which, in most cases, will turn on the question of prejudice.[5] Cotton, 535 U.S. at 631— *214 32, 122 S.Ct. 1781 (applying plain error review); United States v. Sinks, 473 F.3d 1315, 1320-21 (10th Cir.2007) (applying plain, not harmless, error review); see also Ballan, 71 M.J. at 34-36; Girouard, 70 M.J. at 10-12; United States v. Velasco-Medina, 305 F.3d 839, 846-47 (9th Cir.2002); United States v. Rios-Quintero, 204 F.3d 214, 215-16 (5th Cir.2000); United States v. Glick, 142 F.3d 520, 523 n. 3 (2d Cir.1998).
C. Plain Error Review
i.
In the context of a plain error analysis of defective indictments, “[the] [a]ppellant has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.” Girouard, 70 M.J. at 11 (citing United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998)); see also Cotton, 535 U.S. at 631-32, 122 S.Ct. 1781; United States v. Paige, 67 M.J. 442, 449 (C.A.A.F.2009); United States v. Maynard, 66 M.J. 242, 244 (C.A.A.F.2008) (citing United States v. Hardison, 64 M.J. 279, 281 (C.A.A.F.2007)); United States v. Carter, 61 M.J. 30, 33 (C.A.A.F.2005); United States v. Carpenter, 51 M.J. 393, 396 (C.A.A.F.1999). “The standard that we apply here is the constitutional [error] standard as it has been articulated by this [C]ourt in plain error cases since [Powell, 49 M.J. at 465 n. *].” Paige, 67 M.J. at 449 n. 7 (citing, as examples, Harcrow, 66 M.J. at 160; United States v. Brewer, 61 M.J. 425, 432 (C.A.A.F.2005); Carpenter, 51 M.J. at 396).
The statutory basis for this Court’s standard is Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006), which states: “A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.”[6] Where an error of law materially prejudices a substantial right, either this Court or the CCA may notice the error, keeping in mind the need “to encourage timely objections and reduce wasteful reversals;” and to “respect the particular importance of the finality of guilty pleas.” United States v. Dominguez Benitez, 542 U.S. 74, 82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).
Nothing in Article 59(a), UCMJ, mandates reversal even where an error falls within its terms. Powell, 49 M.J. at 465. In our view the statutory text of Article 59(a), UCMJ, with the high threshold of “material[] prejudice” to a “substantial right” and discretion to redress error, when considered in light of the principles the Supreme Court has articulated in its consideration of a different rule, preserves the “careful balance ... between judicial efficiency and the redress of injustice.” Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009).
ii.
We turn, then, to the application of plain error review in this case, having already held that under the law as it exists today, it was plain and obvious error for the Government to fail to allege the terminal element of Article 134, UCMJ, in the adultery specification. See Ballan, 71 M.J. at 34-35; id. at 34 n. 4 (citing Fosler, 70 M.J. at 232, as having overruled Mayo, 12 M.J. at 293-94); see also Johnson, 520 U.S. at 468, 117 S.Ct. 1544 (finding plain and obvious error by applying the law at the time of *215 appeal); United States v. Sweeney, 70 M.J. 296, 304 (C.A.A.F.2011) (same).
Having found plain and obvious error that was forfeited rather than waived, the remaining question is “whether there is a remedy for the error,” which “will depend on whether the error has prejudiced the substantial rights of the accused.” Ballan, 71 M.J. at 30 (citing Article 59, UCMJ); see also Puckett, 556 U.S. at 142, 129 S.Ct. 1423.
The error here — that Appellee, in a contested case, was charged with and convicted of a specification that failed to allege an element of the offense charged — implicates Appellee’s substantial right to notice under the Fifth and Sixth Amendments. See Girouard, 70 M.J. at 10 (“Both [the Fifth and Sixth] amendments ensure the right of an accused to receive fair notice of what he is being charged with.”); see also Fosler, 70 M.J at 232-33 (noting that, in the context of lesser included offenses, “constitutional notice requirements no longer permit[] such broad implication of the terminal element,” and imposing similar limits on implying the terminal element in cases involving charged violations of Article 134, UCMJ). The question, then, is whether the defective specification resulted in material prejudice to Appel-lee’s substantial right to notice. See Article 59(a), UCMJ.
In Ballan, a guilty plea case where there was no objection at court-martial, we applied plain error review and held that it was error for the military judge to accept the appellant’s plea of guilty to a specification that failed to allege an element of the offense charged. 71 M.J. at 34-35. But, despite the error, we held that there was no material prejudice to the appellant’s substantial right to notice. Id. at 35. This is a conclusion, which, as a result of the unique requirements for accepting a guilty plea in the military context, will likely be true in most factually comparable cases (although each case must still be tested for prejudice). See United States v. Nealy, 71 M.J. 73, 77-78 (C.A.A.F. 2012); Ballan, 71 M.J. at 34-35. The same contextual analysis is required in contested cases like Fosler, where the error was preserved — each case must be reviewed for harmless error to determine whether the constitutional error was harmless beyond a reasonable doubt. See supra note 5.
The prejudice analysis in cases like Appel-lee’s is more nuanced than in Bollan or Fosler: the protections afforded in the context of a military guilty plea inquiry are absent, as are the inherent difficulties of proving that a constitutional error is harmless beyond a reasonable doubt. As a result, such eases demand close review of the trial record. See Girouard, 70 M.J. at 11-12. After such review, we find that under the totality of the circumstances in this case, the Government’s error in failing to plead the terminal element of Article 134, UCMJ, resulted in material prejudice to Appellee’s substantial, constitutional right to notice.[7] See id.; McMurrin, 70 M.J. at 19-20; see also Fosler, 70 M.J at 229.
iii.
Mindful that in the plain error context the defective specification alone is insufficient to constitute substantial prejudice to a material right, see Puckett, 556 U.S. at 142, 129 S.Ct. 1423; Cotton, 535 U.S. at 631-32, 122 S.Ct. 1781, we look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or *216 whether the element is “essentially uncontroverted.” Cotton, 535 U.S. at 633, 122 S.Ct. 1781; Johnson, 520 U.S. at 470, 117 S.Ct. 1544. On this record, there is no such notice, and the missing element was controverted. This is particularly problematic in the context of an Article 134, UCMJ, offense, which allows several theories of criminality: “[A]l-though the terms Congress chose for [Article 134, UCMJ] are broad, what is general is made specific through the language of a given specification. The charge sheet itself gives content to that general language, thus providing the required notice of what an accused must defend against.” United States v. Jones, 68 M.J. 465, 472 (C.A.A.F. 2010) (citing Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)). Neither the specification nor the record provides notice of which terminal element or theory of criminality the Government pursued in this case.
In its opening statement, the Government never mentioned the adultery charge — let alone how Appellee’s conduct satisfied either clause 1 or 2 of the terminal element of Article 134, UCMJ.[8] The Government also did not present any specific evidence or call a single witness to testify as to why Appellee’s conduct satisfied either clause 1, clause 2, or both clauses of the terminal element of Article 134, UCMJ. The Government also made no attempt to tie any of the evidence or witnesses that it did call to the Article 134, UCMJ, adultery charge. Although the military judge’s panel instructions correctly listed and defined the terminal element of Article 134, UCMJ, as an element of the adultery specification, this came after the close of evidence and, again, did not alert Appellee to the Government’s theory of guilt. See Foster, 70 M.J. at 230 (“The three clauses of Article 134 constitute three distinct and separate parts. Violation of one clause does not necessarily lead to a violation of the other clauses.” (quotation marks and citation omitted)); id. (principles of fair notice require that “[a]n accused must be given notice as to which clause or clauses he must defend against”).
The Government’s only direct discussion of the adultery specification at issue came during its closing argument when counsel stated the following: “[I]f you are unpersuaded as to what happened between the accused and [AEH], one thing is for sure. That this married man had sex with [AEH]. Members, that constitutes adultery.” This statement provides the lay definition of adultery, but does not provide constitutional notice of the elements of the Article 134, UCMJ, offense of adultery.[9] Specifically, it fails to provide Appellee with notice of which clause of the terminal element of Article 134, UCMJ — the element that was missing from the specification and which, in turn, makes the action described criminal — the Government relied on.
iv.
In sum, the Government did not plead the terminal element of Article 134, UCMJ, and, after a close reading of the trial record, there was nothing during its case-in-chief that reasonably placed Appellee on notice of the Government’s theory as to which elause(s) of the terminal element of Article 134, UCMJ, he had violated. See Girouard, 70 M.J. at 11 (noting that the case was not tried on the theory under which the appellant was con *217 victed). Nor is Appellee’s assertion during closing arguments that the Government had failed to present evidence that his conduct was prejudicial to good order and discipline or service discrediting sufficient for this Court to find either that the charging error was cured, or that the prejudice from that error was dissipated. Appellee was not on notice of whether he needed to defend against this charge on the basis that his conduct was not service discrediting, not prejudicial to good order and discipline, both, or neither. See Fosler, 70 M.J. at 230 (finding constitutional notice deficient because the appellant could not know which theory of criminality he needed to defend against); Girouard, 70 M.J. at 11 (noting that the appellant had not defended against the charge on the theory under which he was convicted). But see Ballan, 71 M.J. at 34 n. 7 (noting that prejudice from the charging error highlighted in Fosler, 70 M.J. at 230, and United States v. Medina, 66 M.J. 21, 26 (C.A.A.F.2008), was not present where the unique requirements for acceptance of a guilty plea safeguarded against prejudice to the substantial right to notice).
No single fact or lacuna in the record itself definitively demonstrates material prejudice to the substantial right to constitutional notice implicated by the charging error. Under the totality of the circumstances in this case, however, the error in the Article 134, UCMJ, specification was not cured by the Government in any respect in the course of trial, as there is not a single mention of the missing element, or of which theory of guilt the Government was pursuing, anywhere in the trial record.[10] Compare Girouard, 70 M.J. at 11-12 (finding prejudice on plain error review), with Ballan, 71 M.J. at 35-36 (finding no prejudice on plain error review where “any notice issues or potential for prejudice [were] cured while there [was] still ample opportunity ... for a change in tactics”). And, while the mere showing of error cannot be “reeastf ]” as the effect on substantial rights, Puckett, 556 U.S. at 142, 129 S.Ct. 1423, nor can the certain error, failure to allege an element, be conflated with the constitutional prejudice, lack of notice — particularly in the context of Article 134, UCMJ, where the missing element represents alternative theories of criminal liability. See Fosler, 70 M.J. at 230.
III. DECISION
The decision of the United States Air Force Court of Criminal Appeals is reversed in part. That portion of the decision affirming Appellee’s conviction of Charge II, Specification 1, is reversed. The finding of guilty to that charge and specification is set aside, and the charge and specification are dismissed. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence, or, if necessary, for ordering a rehearing on the sentence.

. On September 15, 2011, TJAG requested that action be taken with respect to the following issue:
WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN FINDING APPELLEE’S SENTENCE INAPPROPRIATELY SEVERE UNDER THE UNIQUE CIRCUMSTANCES OF THIS CASE AND ERRED IN AN ATTEMPT AT EXERCISING APPELLATE CLEMENCY BY REMANDING THE CASE TO THE CONVENING AUTHORITY WITH INSTRUCTIONS THAT THE CONVENING AUTHORITY MAY APPROVE AN ADJUDGED SENTENCE NO GREATER THAN A SUSPENDED BAD CONDUCT DISCHARGE AND A REDUCTION TO THE GRADE OF E-l.

. United States v. Humphries, 71 M.J. 6 (C.A.A.F. 2011) (order granting review).

. Appellee was also charged with having committed similar offenses with a second woman, but was acquitted of all conduct relative to that incident.

. No one disagrees that in the absence of subject-matter jurisdiction a charge must be dismissed. See, e.g., Gonzalez v. Thaler, — U.S. —, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012) ("[A] valid objection [to subject-matter jurisdiction] may lead a court midway through briefing to dismiss a complaint in its entirety."); Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.” (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868) (quotation marks omitted))); R.C.M. 907(b)(1)(A) (it is a nonwaivable ground for dismissal where "[t]he court-martial lacks jurisdiction to try the accused for the offense”). And no one suggests that the court-martial lacked either jurisdiction over Appellee or jurisdiction over the offenses.

. In Fosler, a contested case where the military judge denied the appellant's motion to dismiss, "[t]he remedy for th[e] erroneously denied motion to dismiss [was] dismissal.” 70 M.J. at 233. Implicit in this determination was our application of the harmless error test and finding that the government had failed to demonstrate that the constitutional error in that case was harmless beyond a reasonable doubt. Id. at 230 (the error was a deficient specification, and principles of fair notice require that "[a]n accused must he given notice as to which clause or clauses he must defend against”); see, e.g., Neder, 527 U.S. at 8, 119 S.Ct. 1827 (only a “very limited class of cases” involving "structural” error are "subject to automatic reversal”; "there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless- *214 error analysis” (quotations marks and citations omitted)); Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

. The statutory basis for the Supreme Court’s standard, meanwhile, is Federal Rule of Criminal Procedure 52(b), which, at the time of United States v. Olano, 507 U.S. 725, 731-38, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), required only that an error "'affect[] substantial rights,’” id. at 732, 113 S.Ct. 1770 (quoting Fed.R.Crim.P. 52(b) (1944)), a less onerous standard by its terms. Fed.R.Crim.P. 52(b) was amended, effective Dec. 1, 2002. It now reads, “A plain error that affects substantial rights may be considered even though it was not brought to the court’s attention.” The Notes of Advisory Committee on 2002 Amendments state that "[t]he change was intended to remove any ambiguity in the rule” and to conform it with Supreme Court precedent. Fed.R.Crim.P. 52(b) advisory committee’s note (citing Olano, 507 U.S. at 732, 113 S.Ct. 1770; United States v. Young, 470 U.S. 1, 15 n. 12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

. We disagree that Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, which held that the prejudice burden in the federal system "requir[es] the showing of 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different,’" id. at 82, 124 S.Ct. 2333 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)), controls this case. In the first instance, that case is interpreting a federal rule, not applying Article 59(a), UCMJ. Moreover, even if it were, the Supreme Court specifically noted that such a standard was appropriate: (1) “to encourage timely objections and reduce wasteful reversals;” (2) to "respect the particular importance of the finality of guilty pleas;” and (3) where "the violation claimed was of [a Federal Rule of Criminal Procedure], not of due process.” Id. at 82-83, 124 S.Ct. 2333. Dominguez Benitez is inap-posite given that: (1) any objection by Appellee at trial would have been futile based on the law at the time — which also alleviates the "sandbagging” concerns noted in Puckett, 556 U.S. at 134, 129 S.Ct. 1423; (2) this is a contested case, not a guilty plea case; and (3) the rights at issue are constitutional.

. The issue in this case — whether Appellee was prejudiced by the Government's failure to allege the terminal element of an Article 134, UCMJ, charge — should not be confused with the issue in United States v. Phillips, 70 M.J. 161 (C.A.A.F. 2011) (addressing whether evidence was legally sufficient to support a finding of guilty as to a properly pleaded Article 134, UCMJ, specification). Specifically, while the Government here presented evidence during the proceedings from which a reasonable trier of fact could conclude that Appellee’s conduct satisfied either clause 1 or 2 of the terminal element of Article 134, UCMJ, see Humphries, 2010 CCA LEXIS 236, at *7, 2010 WL 2266324, at *2 (listing aggravating factors), that answers a quite different question than whether Appellee was on notice of the Government’s theory of guilt with respect to the terminal element in this case. Were legal sufficiency enough, the purpose of retroactivity — “the principle of treating similarly situated defendants the same,” Griffith v. Kentucky, 479 U.S. 314, 323, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)— would be undermined.

. Assuming, even, that such notice could be sufficient at this point in the proceeding.

. To be clear, it is Appellee's burden to prove material prejudice to a substantial right, see Girouard, 70 M.J. at 11, and Appellee has not provided an exemplary brief in support of this point. However, even from a cursory review of the record, the material prejudice to the substantial right to constitutional notice in this case is blatantly obvious, in large part because it appears the charge was, as Appellee argued at trial, a "throw away chargef].” While the convening authority was authorized to refer it, the Government essentially ignored the adultery charge at trial insofar as they did not even mention it until a cursory reference during their closing argument.