# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain CLYDE E. CALLWOOD**
**United States Army, Appellant**

ARMY 20080577

Headquarters, Eighth United States Army
Donna M. Wright, Military Judge
Colonel Steven T. Strong, Staff Judge Advocate (pretrial)
Colonel M. Tia Johnson, Staff Judge Advocate (post-trial)

For Appellant: Patrick J. McLain, Esquire (argued); Major Jacob D. Bashore, JA; Captain Shay Stanford, JA; Patrick J. McLain, Esquire (on brief); Captain Barbara A. Snow-Martone, JA; Patrick J. McLain, Esquire (on reply brief); Captain Stephen J. Rueter, JA (on remand).

For Appellee: Major Adam S. Kazin, JA (argued); Colonel Michael E. Mulligan, JA; Major Christopher B. Burgess, JA; Major Amber J. Williams, JA; Major Adam S. Kazin, JA; Lieutenant Colonel Karen J. Borgerding, JA (on brief); Captain Chad M. Fisher, JA (on remand).

17 December 2012

---------------------------------------------------------------------
MEMORANDUM OPINION ON FURTHER REVIEW
---------------------------------------------------------------------

*This opinion is issued as an unpublished opinion, as such, does not serve as precedent.*

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of attempting to violate a lawful general regulation and one specification each of making a false official statement, wrongful sexual contact, and obstruction of justice in violation of Articles 80, 107, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 907, 920, and 934 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to a dismissal and confinement for fifteen months. The convening authority approved the dismissal and confinement for fourteen months.

CALLWOOD—ARMY 20080577

On 28 January 2011, this court affirmed the findings and sentence in appellant's case. *United States v. Callwood*, ARMY 20080577 (Army Ct. Crim. App. 28 Jan. 2011). On 7 April 2011, appellant petitioned the Court of Appeals for the Armed Forces (CAAF) for review. On 13 June 2011, CAAF granted appellant's petition for review with respect to the following assignment of error:

> WHETHER APPELLANT WAS DENIED HIS SIXTH
> AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE
> OF COUNSEL, WHERE HIS TRIAL DEFENSE
> COUNSEL'S ACTIONS DURING THE PRETRIAL
> HEARING LED DIRECTLY TO APPELLANT'S
> CONVICTION OF ADDITIONAL CHARGES AND
> SPECIFICATIONS, AND WHERE HIS TRIAL DEFENSE
> COUNSEL FAILED AT TRIAL TO CALL TWO
> WITNESSES WHO WOULD HAVE UNDERMINED THE
> CREDIBILITY OF THE GOVERNMENT'S KEY
> WITNESSES.

The CAAF also granted appellant's petition for review on the following specified issue:

> WHETHER AN ARTICLE 134 CLAUSE 1 OR 2
> SPECIFICATION THAT FAILS TO EXPRESSLY
> ALLEGE EITHER POTENTIAL TERMINAL ELEMENT
> STATES AN OFFENSE UNDER THE SUPREME
> COURT'S HOLDINGS IN UNITED STATES v.
> RESENDIZ-PONCE AND RUSSELL v. UNITED
> STATES, AND THIS COURT'S RECENT OPINIONS IN
> MEDINA, MILLER, AND JONES. SEE UNITED
> STATES v. FOSLER, 69 M.J. 490 (C.A.A.F. 2011).

Our superior court vacated our original decision and returned the record of trial to The Judge Advocate General of the Army for remand to this court for further appellate inquiry and consideration on the granted issues. *United States v. Callwood*, 70 M.J. 213 (C.A.A.F. 2011). Consequently, appellant's case is once again before this court for review under Article 66, UCMJ.

The CAAF ordered this court to secure affidavits from the civilian defense counsel and detailed trial defense counsel relating to the assignment of error. On 23 June 2011, this court ordered appellate government counsel to obtain affidavits and relevant documents responsive to appellant's assignment of error from Mr. W, appellant's civilian defense counsel at the investigation conducted pursuant to Article 32, UCMJ [hereinafter Article 32 hearing] and at trial; Captain (CPT) K, the detailed trial defense counsel, who, along with Mr. W, represented appellant at his

2

Article 32 hearing; and Major (MAJ) R, the trial defense counsel who, pursuant to appellant's request, replaced CPT K and, along with Mr. W, represented appellant at his trial. We have now received these affidavits and relevant documents. We have also received a brief submitted on behalf of appellant that includes an additional affidavit from appellant and a brief from appellee. Pursuant to our review, the assigned issue merits discussion, but no relief. The specified issue merits discussion and relief and we will take appropriate action in our decretal paragraph.

## FACTS

The assigned issue is a compound claim of ineffective assistance of counsel. Accordingly, we will first address the relevant facts surrounding the Article 32 hearing. We will then cover facts relevant to the failure to call two witnesses.

*Article 32 Hearing*

Mr. W served as appellant's lead defense counsel at both the Article 32 hearing and at trial. Because Mr. W was lead counsel for appellant during these portions of the proceedings and because the assignment of error raises issues concerning whether Mr. W's actions constituted ineffective assistance of counsel, we will focus our review on Mr. W's performance.

Appellant was initially charged with violations of Articles 80 (attempting to violate a general regulation), 120 (wrongful sexual contact), and 134 (indecent assault), UCMJ. Appellant testified at the Article 32 hearing conducted to investigate these charges. Appellant provided unsworn testimony at the hearing in a question and answer format. The portion of this testimony that ultimately resulted in the preferral of two additional charges was as follows:

> Mr. W: Have you ever been charged with, arrested for, or accused of any type of sexual harassment or abuse or anything of that nature?
>
> Appellant: Negative. I was never charged or accused of any—any crimes.
>
> Mr. W: Any counseling statements for abuse or mistr--[sic] anything, anything?
>
> Appellant: No. There's no record of anything like that.[1]

---

[1] Appellant's unsworn Article 32 hearing testimony was entered into evidence at trial.

Based on this testimony, appellant was subsequently charged with a violation of Article 107, false official statement and Article 134, obstruction of justice. Appellant waived his right to have these additional charges investigated at an Article 32 hearing.

To support these charges, at trial the government entered into evidence a U.S. Army Criminal Investigation Command (CID) Report of Investigation that documented appellant had been accused by Ms. AW of indecent assault and indecent exposure in 1992. According to these documents, CID conducted an investigation into the accusations, including multiple interviews of appellant that were preceded by Article 31, UCMJ rights warnings wherein appellant was informed he was suspected of indecent assault and indecent exposure. Also contained in the investigative packet was a "Commander's Report of Disciplinary or Administrative Action" that reflected appellant received administrative counseling in response to this allegation. In addition, the government called Mr. CW as a witness. Mr. CW was a CID agent in 1992 and investigated Ms. AW's allegations against appellant, to include interviewing appellant.

To additionally support these charges, the government entered into evidence a General Officer Memorandum of Reprimand (GOMOR) appellant received in 2005 for engaging in an adulterous relationship with a married woman. Finally, the government called CPT H and MAJ G to testify at appellant's trial. Captain H testified appellant had sexually harassed her in 2006 and she shared this complaint with MAJ G. Major G testified that CPT H made a sexual harassment complaint against appellant. Major G further testified he verbally counseled appellant in regards to CPT H's sexual harassment allegation.

The military judge convicted appellant of both the false official statement and obstruction of justice charges.

Although the assigned issue questions only whether Mr. W's actions during the Article 32 hearing were the driving force behind these convictions, appellant's briefs and affidavits also allege Mr. W's inactivity before the hearing contributed to these convictions. These additional allegations are that: (1) Mr. W failed to conduct an independent background investigation on appellant that would have revealed derogatory information; and (2) Mr. W failed to properly prepare appellant to testify at the Article 32 hearing.

In regards to the first additional allegation, there is no evidence Mr. W conducted, or requested that someone else perform, a background investigation on appellant prior to the Article 32 hearing.

In regards to the second additional allegation, appellant made multiple post-trial statements. In his statement contained as part of his December 2008 Rule for Courts-Martial (R.C.M) 1105 and 1106 clemency submission, appellant stated:

> I am not guilty of aggravated sexual assault. I do take responsibility for the false official statement charge. My attorney asked me a confusing question and I did not understand the difference between being "charged" for a crime and being "titled" for a crime.
>
> . . . .
>
> Prior to this offense, 16 years ago when I was a specialist (E-4), I was asked about a brief mutual engagement with a female I met. I cooperated with the authorities at Ft. Stewart and my chain of command. I was verbally warned and counsel [sic] not to display physical affection of that nature in public on the installation. Whenever I was asked to appear for questioning or to provide a statement on that incident, I was always available without hesitation nor [sic] did I seek legal counsel. As a result, when my defense attorney asked if I was ever accuse [sic] of a crime I said no. I was responding to the particular incident in Korea. I was counsel [sic] over 16 years ago when I was an E-4. I did give an un-sworn statement and I am charge [sic] with given [sic] a false official statement regardless of it being unintentional or intentional. The punishment of confinement is extreme for that statement. The counseling was over 16 years previously [sic] and I understood the question as related to the current charge and my chain of command.
>
> . . . .
>
> I am acknowledging the charge of false official statement, which I have [sic] committed when I provide [sic] an un-sworn statement. During my un-sworn statement, I was not aware that I was officially charged since I was not told in writing or verbally in 1992 a crime [sic], however, I did receive a verbal counseling from my squad leader regarding conducting myself as a Soldier on and off the installation. I do not recall signing a written counseling statement nor was one provided to show that I did.

In his first post-trial affidavit, dated April 21, 2010 (Def. App. Ex. A), appellant alleged:

> Mr. [W] insisted that I give an unsworn statement at my Article 32 hearing. He told me that I had to so that I could not be cross-examined. He informed me that it was something I needed to do and that I could not get in any trouble for making an unsworn statement. However, due to the unsworn statement I was pressured into giving, I was charged with two additional offenses . . . . Mr. [W's] job was to defend me, not bring on additional charges. Although he did inform the Court that it was his poor wording of the questions which confused me and led to the statement that was interpreted as being false, I still was charged. A competent attorney would have adequately prepared his questions as not to confuse or mislead his own client.

Appellant's second post-trial affidavit, dated August 23, 2010 (Def. App. Ex. B), is unrelated to this issue. In his third post-trial affidavit, dated October 14, 2011 (Def. App. Ex. B)[2], submitted in response to affidavits his counsel had submitted, appellant alleged that:

> We [appellant and Mr. W] initially met in Seoul, Korea, at this time I did in fact told [sic] Mr. [W] that during my enlisted time I had some problems with my former spouse that could come up during my trail [sic] . . . . He told me not to worry about that because I was not charged. I told him that a local LOR was giving [sic] and he told me that it was local and can't be used against me. He also told me that if I was not formally charged with a crime it is nothing to worry about. . . . Mr. W was fully aware of my LOR and other allegations against me prior to taking on my case, the both of us discussed it. During a break at the Article 32 hearing, Mr. W told me that I am going to have to take the stand to tell my side of the story to the [IO]. He told me that I can give an unsworn statement and I cannot be cross examine [sic] by the government. He told me that my statement was just to let the IO know what is going on and to clear up any thoughts he might have. We did not discuss any questions what [sic] will be asked or

---

[2] This exhibit should have been marked as Def. App. Ex. C because appellant's second post-trial affidavit had already been marked as Def. App. Ex. B.

> how it will be ask.  As a result, additional charges was
> [sic] brought against me due to him recommending that I
> provide an unsworn statement and the way he phase [sic]
> the questions to me.

In response to the allegation that he had failed to properly prepare appellant to testify at the Article 32 hearing, Mr. W stated in his affidavit, based on conversations with appellant, the defense strategy for the Article 32 hearing would have two prongs.  First, the defense would attack the character for truthfulness of the two alleged victims, Private First Class (PFC) I and PFC J.   Appellant would bolster this attack through his own testimony by establishing a motive for each accuser to fabricate allegations against him.  Second, appellant would deny the allegations and further testify he was a good soldier and leader and that the allegations were completely out of character.

Mr. W further stated in his affidavit that in discussing his past, appellant informed Mr. W the only time he had been in trouble was when he had received a Letter of Reprimand (LOR) while stationed in El Paso, Texas.  This incident stemmed from a bitter divorce, had happened years before, was based on his then-wife telling lies, and the underlying allegations involved financial obligations.

Mr. W stated that although he did not write out his specific questions, and therefore did not give appellant a copy of them, he did orally go over appellant's testimony before the Article 32 hearing.  This included reviewing appellant's testimony "about the victims, [and] their backgrounds" as well as appellant's military career and "his lack of prior misconduct."  Mr. W also stated he told the appellant "that if he was going to take the stand, then he had to testify truthfully."  In addition, during a lunch recess on the day of the hearing, Mr. W told appellant he was going to ask him "if he was ever accused of, arrested for, investigation [sic] for any time [sic] of sex crime, sexual harassment, or abuse against women."

Mr. W attached a "[C]ase analysis memorandum" to his affidavit.  Mr. W created this memorandum approximately two weeks before appellant's trial to provide appellant with a written record of his evaluation and recommendation concerning appellant's trial.  In this memorandum, Mr. W stated that besides the LOR received in El Paso, appellant had led Mr. W to believe he "had a clean and unblemished background, which included no prior criminal conduct, no negative counseling, and no other negative information…."  In a section entitled "OTHER PRIOR ACTS EVIDENCE," Mr. W listed several incidents in which appellant had been involved in alleged misconduct.  Mr. W stated in the memorandum the government had provided this information in response to defense discovery requests.

*Failure to Call Two Impeachment Witnesses at Trial*

Although the two witnesses are not named in the assigned issue, it is readily apparent from appellant's briefs the witnesses in question are Sergeant (SGT) C and SGT W. Both of these soldiers testified at appellant's Article 32 hearing.

Pursuant to the Article 32 hearing transcript, SGT C corroborated PFC J's testimony that appellant had given body wash to PFC J and that appellant had also given PFC J his phone number on a napkin. In addition, pursuant to questioning by Mr. W at the Article 32 hearing, SGT C testified she was familiar with PFC J's character for truthfulness and that PFC J was not a truthful person.

Sergeant W was called by the defense to testify at the Article 32 hearing. On direct questioning by Mr. W, SGT W testified he had worked with PFC I in the past and he did not think PFC I was a truthful person. On cross-examination, SGT W testified he was basing his opinion on one instance when he thought PFC I was lying to him. This specific incident involved SGT W asking PFC I if she was dating SSG I and PFC I stating she was not dating SSG I. However, SGT W was not certain whether PFC I lied to him because, although PFC I and SSG I ended up getting married, SGT W did not know whether PFC I was dating SSG I at the time he asked her the question. Neither SGT C nor SGT W testified at appellant's trial.

## LAW AND DISCUSSION

*The Assigned Issue*

In evaluating ineffective assistance of counsel allegations, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard requires appellant to demonstrate (1) that counsel's performance was deficient, and (2) that this deficient performance prejudiced appellant. *Id.* at 687. In examining the first part of this test, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The relevant issue is whether counsel's conduct failed to meet an objective standard of reasonableness or whether it was outside the "wide range of professionally competent assistance." *Id.* at 694. "On appellate review, there is a 'strong presumption' that counsel was competent." *United States v. Grigoruk*, 56 M.J. 304, 306-07 (C.A.A.F. 2001) (citing *Strickland*, 466 U.S. at 689). The second part of the test is met by showing a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Essentially, appellant asserts that his counsel was ineffective by failing to conduct an independent background search into his client. Defense counsel must be permitted to rely on information provided them by their client.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Strickland*, 466 U.S. at 691. Furthermore, appellant never asked for a background check or affirmatively indicated one was required or even desired. Accordingly, we decline to find the absence of this investigation supports a finding that Mr. W's performance was deficient.

The defense strategy employed at the Article 32 hearing was shaped in accordance with appellant's representations to Mr. W. The strategy was to attack the accusers' character for truthfulness, identify a motive for them to fabricate allegations against appellant, and show these allegations were wholly inconsistent with appellant's character. Pursuant to *Strickland* and based on appellant's representations to Mr. W, covered in more detail below, we find Mr. W's strategy at the Article 32 hearing to be reasonable.

Before addressing allegations appellant has made, we turn our attention to an allegation appellant has not made. Specifically, appellant has not alleged Mr. W counseled him to make a deliberately false statement during the Article 32 hearing. In addition, appellant has not contested Mr. W's statement that he told appellant to testify truthfully if appellant took "the stand." Regardless of what prior acts of misconduct appellant did or did not disclose to Mr. W prior to the Article 32 hearing, an issue discussed below, appellant had an independent obligation to testify truthfully at this hearing. The appellant was obliged to testify truthfully whether he provided sworn or unsworn testimony at the Article 32 hearing and appellant was responsible for the false statements he made during the Article 32 hearing, not Mr. W.

In regards to the ultimate question of whether Mr. W's actions led to additional charges against appellant, a related issue of what past incidents of misconduct appellant disclosed to Mr. W prior to the Article 32 hearing needs to be addressed. Pursuant to their affidavits, Mr. W and appellant agree that appellant disclosed an El Paso, Texas incident involving a financial issue and appellant's ex-wife that resulted in a LOR. There is no evidence in the record that indicates this incident involved sexual harassment or sexual abuse. Therefore, based on appellant's disclosure of this incident, Mr. W's decision to ask appellant the two questions that led to the additional charges, namely, "[h]ave you ever been charged with, arrested for, or accused of any type of sexual harassment or abuse or anything

of that nature?"; and have you received "[a]ny counseling statements for abuse...?" was not inappropriate and did not constitute ineffective assistance of counsel.

In appellant's third affidavit, written in response to Mr. W's affidavit, appellant includes one brief comment that could be construed to imply he had told Mr. W about allegations of misconduct in addition to the issues surrounding the LOR.  The statement in question was as follows: "Mr. [W] was fully aware of my LOR and other allegations against me prior to taking on my case, the both of us discussed it."  However, to the extent this statement can be interpreted to mean appellant disclosed prior additional acts of misconduct beyond the LOR to Mr. W before the Article 32 hearing, to include those used against him at trial, and that Mr. W was complicit in soliciting appellant's false statement, we reject it.  *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) ("the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations" and "the claim may be rejected on that basis.")

Assuming arguendo appellant's third affidavit is factually adequate on its face to support an allegation appellant had disclosed the prior acts of misconduct beyond the LOR, to include those used against him at trial, to Mr. W before the Article 32 hearing, the appellate filings and the record as a whole "compellingly demonstrate the improbability of those facts."  Thus, we also discount that factual assertion pursuant to the fourth *Ginn* principle.  *Id.*  If appellant had disclosed "the other allegations against" him prior to the Article 32 hearing, this would have vitiated most of the second part of the defense strategy employed during the Article 32 hearing – namely that appellant was a good soldier and leader and that the allegations were completely out of his character.  This allegation is also inconsistent with appellant's own prior post-trial statements.

To the extent this statement can be read consistently with appellant's voluminous submissions, wherein appellant did not allege he had disclosed to Mr. W the incidents that led to the additional charges or that he did not support the early case strategy, a reasonable interpretation is that appellant was referring to the issues surrounding the issuance of the LOR when he used the phrase, "other allegations against me."

In turning to appellant's specific allegation of ineffective assistance of counsel, we need to address the issue of whether Mr. W properly prepared appellant to testify at the Article 32 hearing.   In his most sweeping allegation, appellant, in his third affidavit and for the first time, stated in regards to his testimony at the hearing, he and Mr. W "did not discuss any questions" and did not cover "what will be asked or how it will be" asked.   Mr. W, in his affidavit, stated to the contrary; although he did not write out the questions he would ask appellant, Mr. W did discuss the questions he would ask appellant during the hearing.

10

Because appellant and counsel have filed post-trial affidavits that conflict on these issues, we have analyzed whether a post-trial evidentiary hearing is required, *Ginn*, 47 M.J. 236. Although appellant's affidavits are factually adequate, "the appellate filings and the record as a whole," particularly the transcript of appellant's testimony at the Article 32 hearing, "compellingly demonstrate" the improbability appellant testified at the Article 32 hearing without discussing any questions or topics of questioning with Mr. W. We are therefore able to discount that factual assertion and decide the legal issue without a post-trial evidentiary hearing. *Id*. at 248.

In support of proving the appellant guilty of the additional charges, the government entered into evidence the transcript of appellant's testimony from the Article 32 hearing. Appellant's unsworn statement was not a lengthy monologue. To the contrary, the transcript contains twenty-five pages of numerous questions posed by Mr. W and answers provided by appellant. As evidenced by the questions he asked, Mr. W had sufficient knowledge prior to the hearing to ask appellant questions that furthered the defense theory of the case. Specifically, he posed questions to appellant to establish his prior military assignment history, motives for the accusing witnesses to fabricate allegations against appellant and appellant's lack of prior misconduct.

Appellant also alleges the confusing nature of Mr. W's questions contributed to his false statements. In the matters appellant personally submitted as part of the R.C.M. 1105 and 1106 packet, appellant stated that: he did not understand the difference between being "charged" and "titled" with a crime; he was "not aware that I was officially charged since I was not told in writing or verbally in 1992"; and he had not received a written counseling, but only a "verbal counseling from my squad leader regarding conducting myself as a soldier on and off the installation." This quibbling does not make Mr. W's questions confusing.

Pursuant to the transcript of the Article 32 hearing and the strategy employed at the Article 32 hearing, and using the *Strickland* standard, Mr. W's questions were not responsible for appellant's false statements. It is abundantly clear appellant's dishonest answers during his Article 32 hearing, not the questions, resulted in appellant being charged with, and convicted of, additional misconduct.

In regards to whether Mr. W provided ineffective assistance of counsel because he did not call SGT C or SGT W to impeach the accusing witnesses, one needs to first review the Article 32 hearing transcript. This is telling because both SGT C and SGT W did testify at the Article 32 hearing.

Sergeant C was called as a government witness during the Article 32 hearing. On direct examination, SGT C corroborated PFC J's testimony that appellant had given PFC J a bottle of body wash and his phone number. Pursuant to another

11

witness' testimony at trial, appellant had stated that one way to attract women was to give them body wash. On the other hand, during Mr. W's cross-examination, SGT C testified PFC J had lied to SGT C in the past and that SGT C had heard from others that PFC J was a liar. Failure to call this witness at trial, a witness that could both help and hurt appellant's case, is a reasonable tactical decision not amounting to ineffective assistance in this case. *See United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (internal citations omitted).

Likewise, calling SGT W at trial would have presented a problem for appellant. At the Article 32 hearing, SGT W testified he had no first-hand knowledge of any of the charged offenses and did not think PFC I was truthful. However, this opinion was based on one instance when he thought PFC I was lying to him, but that his conclusion could have been specious. Other than this one incident, SGT W thought that PFC I was a truthful person and therefore bolstered PFC I's character for truthfulness, instead of impeaching it. Failure to call SGT W as a trial witness was therefore a reasonable tactical decision and did not amount to ineffective assistance of counsel. *Id.*

As to this assignment of error, in applying the first part of the *Strickland* test, we find appellant has failed to demonstrate counsel's performance was deficient. We therefore further find appellant's claim of ineffective assistance of counsel lacks merit.

### *The Specified Issue*

The elements of a crime under clause 1 or 2 of Article 134, UCMJ are that (1) the accused engaged in certain conduct, and (2) that the conduct was prejudicial to good order and discipline or service discrediting. *See Manual for Courts-Martial, United States* (2008 ed.), pt. IV, ¶ 66.b(1)(e).

"The Government must allege every element expressly or by necessary implication, including the terminal element." *United States v. Fosler*, 70 M.J. 225, 232 (C.A.A.F. 2011). Pursuant to *United States v. Humphries*, 71 M.J. 209 (C.A.A.F. 2012), even if this specification does not allege the terminal elements by necessary implication, the question remains whether the defect resulted in material prejudice to appellant's substantial right to notice. This question is answered by a close review of the record to determine if "notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'" *Humphries*, 71 M.J. at 215-16 (citing *United States v. Cotton*, 535 U.S. 625, 633 (2002)).

In view of *Humphries*, we are compelled to disapprove the finding of guilt as to the Article 134, UCMJ, offense alleged in Additional Charge II and its Specification. The specification does not contain allegations of terminal elements

under Article 134, UCMJ, and there is nothing in the record to satisfactorily establish notice of the need to defend against a terminal element as required under *Humphries*. Therefore, we now reverse appellant's conviction for obstruction of justice and dismiss the defective specification which failed to state an offense in light of *Fosler*.

## CONCLUSION

On consideration of the entire record, the assigned and specified errors, the briefs submitted by the parties, and in light of *United States v. Fosler*, 69 M.J. 490 (C.A.A.F. 2011), the findings of guilty of Additional Charge II and its Specification, obstruction of justice, are set aside and dismissed. We affirm the remaining findings of guilty. Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors identified by Judge Baker in his concurring opinion in *Moffeit*, the court affirms the sentence as approved by the convening authority.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

13