# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**THE COURT EN BANC**

**UNITED STATES OF AMERICA**

**v.**

**DUSTIN L. HACKLER**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201400414**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 20 June 2014.
**Military Judge:** LtCol Elizabeth A. Harvey, USMC.
**Convening Authority:** Commanding General, 1st Marine Logistics Group, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation**: LtCol E.J. Peterson, USMC.
**For Appellant:** Maj Benjamin Robles, USMC; LT Ryan Aikin, JAGC, USN.
F**or Appellee:** Maj Suzanne Dempsey, USMC; LT James Belforti, JAGC, USN; LT Amy Freyermuth, JAGC, USN.

**17 March 2016**

------------------------------------------------------
**PUBLISHED OPINION OF THE COURT**
------------------------------------------------------

KING, Senior Judge:

The appellant pleaded not guilty at a general court-martial consisting of members with enlisted representation of committing a sexual assault and abusive sexual contact upon Sergeant (Sgt) F, and of committing a sexual assault upon and adultery with Lance Corporal (LCpl) D .[1]

---

[1] Charge I: Violation of the UCMJ, Article 120

Specification 1:  In that [the appellant] did . . . on or about 19 August 2012, commit sexual contact upon  [Sgt F] to wit:  touch her breasts when the accused knew or reasonably should have known that [Sgt F] was asleep.

Specification 2:  In that [the appellant] did . . .  on or about 19 August 2012, commit a sexual act upon [Sgt F] to wit: insert his fingers into her vagina, when the accused knew or reasonably should have known that [Sgt F], was asleep.

The members acquitted the appellant of the offenses against Sgt F, but convicted him of assault consummated by a battery (battery) on LCpl D as a lesser included offense (LIO) of sexual assault and adultery with LCpl D, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934. The members sentenced the appellant to be reduced to pay grade E-1, hard labor without confinement for 90 days, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

The appellant initially raised three assignments of error (AOE): (1) the evidence was factually and legally insufficient to convict on battery; (2) the evidence was factually and legally insufficient to convict on adultery; and (3) the convening authority's action inaccurately reflects the members' findings. This court specified the issue of whether it was error to instruct the members on the LIO of battery. Finally, the appellant raised a supplemental AOE, arguing that his conviction of adultery violates the Due Process clause of the Fifth Amendment to the United States Constitution. Sitting *en banc*, the court heard oral argument on the supplemental AOE.

We find the LIO of battery was not reasonably raised by the evidence and that the appellant was therefore prejudiced by his conviction of that offense. We will set aside that conviction, dismiss that charge, and reassess the appellant's sentence. After our corrective action, we find no other error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

### Background

After a night of drinking in October of 2012, Corporal (Cpl) Beal, LCpl Bailey, LCpl D, and the appellant returned to LCpl D's apartment, where LCpl D went to her room and fell asleep fully clothed. The other Marines continued to drink until Cpl Beal left and LCpl Bailey fell asleep in the living room.

LCpl Bailey testified that she awoke and used the head in LCpl D's bedroom. Along the way, she noticed "two shapes" in LCpl D's bed. She returned to the living room and went back to sleep. LCpl D testified that she awoke in her bed to discover her pants and underwear down around her ankles and the appellant on top of her with his penis "inside" her vagina.[2] She yelled at the appellant to get out of her house, moved out from beneath him, and pulled up her clothing. LCpl Bailey testified that the appellant woke her up and asked for a ride home about 30 minutes after she had used the head. They both left LCpl D's apartment at that time.

---

Specification 3: In [the appellant] did . . . on or about 30 October 2012, commit a sexual act upon [LCpl D] to wit: insert his penis into her vagina, when the accused knew or reasonably should have known that [LCpl D] was asleep.

Charge II: Violation of the UCMJ, Article 134

Specification: In that [the appellant] did, . . . on or about 30 October 2012, wrongfully have sexual intercourse with [LCpl D], a woman not his wife, such conduct being to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

[2] Record at 358-59.

No other evidence regarding the assault was offered by either side. Instead, civilian defense counsel's (CDC) cross-examination and closing argument suggested that LCpl D consented to the intercourse, offered several reasons why LCpl D would fabricate the allegation, and highlighted her post-assault communications with the appellant that indicated she was not unhappy with the appellant. The defense did not challenge whether sexual intercourse occurred.

## A. Lesser Included Offense

We turn first to the specified issue of whether it was appropriate for the military judge to instruct the members on the LIO of battery of which the appellant was ultimately convicted. In addition to the sexual assault allegation regarding LCpl D, the appellant was charged with abusive sexual contact for touching Sgt F's breasts and sexual assault for inserting his fingers into Sgt F's vagina while he knew or reasonably should have known that she was sleeping. At the close of evidence, the parties discussed the proposed instructions. To properly resolve the AOE, it is necessary to include that discussion here in detail.

After the trial counsel (TC) requested the LIO instruction of battery for all three specifications under Charge I, the military judge responded:

Okay. Now, let me address them[.] I will get to you in a second [CDC]. Now, as it relates to Specification[s] 2 and 3 of Charge I[,] those are both charged as sexual assaults. It is possible for Specification 2 to have as [an LIO] abusive sexual contact. It is not possible for Specification 3 because the definition of sexual act as it relates to Specification 3 does not encompass the specific intent required by abusive sexual contact. So, therefore, abusive sexual contact with what is Specification 3 would have an element not included in the greater offense; it is not an LIO. So, but as to Specification 2 because of the definition of sexual act as it applies to that offense[,] it could apply. And it could apply just if they believe that it was basically touching instead of a penetration.

. . . .

All right. And then there was evidence concerning voluntary intoxication in that it could negate specific intent required in Specifications 1 and 2 or the LIO of, under Specification 2, of abusive sexual contact.[3]

When the military judge asked if the CDC had "any issues" with the proposed instructions, the following discussion ensued:

CDC: Well, ma'am, I guess we probably should of had this discussion before you spent so much time doing the LIO themselves. It was our opinion that the – straight up it is either abusive sexual contact or not. And actually would object to the instructing on the LIO of . . . battery. Either they believe he was taking advantage of her for sexual purposes or not.

---

[3] *Id.* at 427-29.

3

MJ: Well, here is the thing though, we are introducing voluntary intoxication. So as it relates to Specification[s] 1 and 2, voluntary intoxication is offered[.] [I]f they decide that it does in fact negate the intent element would kind of leave us in that realm of . . . battery.

CDC: But, again, it's an unwanted touching. I guess in that sense if you're talking . . . battery that somehow or another is unwanted and that his intentions –

MJ: It doesn't matter what his intent is.

CDC: Okay. I understand why you are saying that from a consent standpoint. But I just – really from a defense perspective we prefer it be an all or nothing and not have to mess with the LIO, but that's our position on that.[4]

Prior to instructing the members, the military judge asked the defense if they had "anything else," to which the CDC responded: "I believe, -- we asked about the instructions, ma'am, I believe we were actually on the record yesterday as we were discussing those instructions so my objection to including the [LIOs] is arguable [sic].[5] The military judge stated: "It's already in the record? Okay. Thank you."[6] The military judge apparently overruled the defense objection to the LIO instructions since the members were instructed that battery was an LIO of all three specifications under Charge I.

The military judge then properly instructed the members that battery was an LIO of the two specifications involving Sgt F, since both required the Government to prove the appellant committed the acts with the "intent to . . . arouse or gratify the sexual desire of any person." The LIO was thus appropriate since, "the evidence has raised the issue of voluntary intoxication in relation to the offenses alleged in Specifications 1 and 2 of Charge I[.] . . ." and such evidence could "cause you to have a reasonable doubt that the accused had the specific intent [required]."[7] The military judge also correctly instructed that "[v]oluntary intoxication is not relevant in considering whether the government has proven the elements of Specification 3[.]"[8]

Finally, although neither intent nor voluntary intoxication were relevant, the military judge nonetheless instructed the members that battery was an LIO of the sexual assault specification involving LCpl D:

In order to find the accused guilty of [Specification 3 of Charge I], you must be convinced by legal and competent evidence beyond a reasonable doubt: One, that

---

[4] *Id.* at 434-35.

[5] *Id.* at 439.

[6] *Id.*

[7] *Id.* at 447-48.

[8] *Id.* at 447.

. . . the accused committed a sexual act upon [LCpl D] to wit: inserting his penis into her vagina; and[] [t]wo, that the accused did so when he knew, or reasonably should have known, that [LCpl D] was asleep. In this Specification, "sexual act" means the penetration, however slight, of the vulva or anus or the mouth of another by the penis.

. . . .

The court is further advised that the offense of . . . battery is [an LIO] of the offense set forth in specification – that should say – I'm sorry – that should say Specification 3 of Charge I.[9] When you vote, if you find the accused not guilty of the offense charged, that is abusive sexual contact – sorry – and that should say sexual assault – then you should consider the [LIO] of . . . battery . . . . In order to find the accused guilty of this [LIO], you must be convinced by legal and competent evidence, beyond a reasonable doubt: One that . . . the accused did bodily harm to [LCpl D]; [t]wo, that the accused did so by touching her vagina; and[] [t]hree, that the bodily harm was done with unlawful force and violence. . . . The offense charged, sexual assault, and the [LIO of battery] differ in that the offense charged requires as an element that . . . the accused committed a sexual act, as I have defined that term for you, while he knew, or reasonably should have known, that B.F. [sic] was asleep; whereas the [LIO of battery] requires only bodily harm, as I've defined that term for you.[10]

During closing argument, the TC stated:

[L]et's talk about [LCpl D]. Specification 3 that the accused committed sexual contact upon [LCpl D] by inserting his penis into her vagina and that once again he did it when she was asleep and he knew, or reasonably should have known, that she was asleep. And, members, you will see the definition of sexual act is different here than it was in the previous specification, Specification 2. I want to explain here, it's a penis. There's no specific intent, there is no intent to arouse or gratify, it's just penetration of the vagina by the penis.[11]

The CDC argued that while sexual activity may have taken place, the evidence more reasonably indicated that LCpl D was awake and consenting. Neither party referenced the LIO for this specification during argument. The member's acquitted the appellant of Specifications 1 and 2 of Charge I, but convicted him of the LIO of battery for Specification 3.

---

[9] The written instructions provided to the members erroneously stated "Specification 1 of Charge I" and erroneously identified the victim as "B.F." Appellate Exhibit XXXVII at 5.

[10] Record at 445-46.

[11] *Id*. at 461.

**Discussion**

In response to the specified issue, the appellant argues that no rational panel could have acquitted him of the greater offense and convicted him of the LIO, because the only evidence presented at trial as to either offense was LCpl D's testimony that she awoke to discover the appellant's penis inside of her vagina. "The defense theory at trial was that any contact between LCpl [D] and [the appellant] was consensual. The extent of the physical contact was not disputed by the defense. The Government put forward no other theory of nonconsensual touching. The only facts in evidence that could establish the LIO are that (1) [the appellant] penetrated LCpl [D's] vagina with his penis (2) while LCpl [D] was asleep.[12] The Government counters that the evidence presented at trial could lead a rational panel to conclude that the "[a]ppellant indeed touched LCpl [D's] vagina, but had not fully penetrated it with his penis."[13]

A military judge has a *sua sponte* duty to instruct the members on LIOs reasonably raised by the evidence. *See, e.g., United States v. Bean,* 62 M.J. 264, 266 (C.A.A.F. 2005); *see also* RULE FOR COURTS-MARTIAL 920(e)(3), MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012 ed.). "Evidence 'reasonably raises' a lesser included offense if it could cause members to 'attach credit' or rely upon it if they so choose." *Bean*, 62 M.J. at 266 (quoting *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000)). Moreover, consistent with *Sansone v. United States,* 380 U.S. 343, 350 (1965), a military judge can only instruct on an LIO where the "greater offense requires the [members] to find a disputed factual element which is not required for conviction of the lesser-included offense." (Citations omitted). *See also United States v. Tunstall,* 72 M.J. 191, 195 (C.A.A.F. 2013); *United States v. Miergrimado*, 66 M.J. 34, 36 (C.A.A.F. 2008); *United States v. Griffin,* 50 M.J. 480, 482 (C.A.A.F. 1999); *United States v. Jackson,* 12 M.J. 163, 167 (C.M.A. 1981); R.C.M. 920(e) Discussion.[14]

We therefore consider whether the evidence "reasonably raised" a disputed factual element that distinguished the greater offense of sexual assault from the lesser offense of battery. This issue presents a question of law that we review *de novo*. *United States v. Miller,* 67 M.J. 385, 387 (C.A.A.F. 2009). The parties imply that the appellant failed to object to the LIO instruction at trial and he therefore forfeits the issue absent plain error. We disagree. The defense counsel clearly objected to the LIO instructions and, while he may have utilized the phrase "sexual contact," seemingly referring only to Specification 1 of Charge I, the objection was in response to the TC's request for the LIO instruction to all three specifications under Charge I. Moreover, the objection resulted in a conversation regarding sexual acts as well as contact. Finally, the defense reiterated their objection to the LIOs when the CDC rose to ensure that his objections were "on the record." While not the model of clarity, we find the CDC's objections adequate to avoid forfeiture.

---

[12] Appellant's Brief on the Specified Issue filed 17 Sep 2015 at 8.

[13] Government's Answer to Specified Issue filed on 2 Nov 2015 at 10. Contrary to the Government's current position, the TC argued at sentencing that the members had found the appellant guilty of battery by "putting his penis inside of her." Record at 556.

[14] The *Sansone* standard is applicable where an LIO instruction desired by the Government was submitted to the members over defense objection. *Miergrimado*, 66 M.J. at 36.

6

In *United States v. Waldron*, this court addressed whether the military judge improperly provided an LIO instruction over defense objection when there was no disputed factual issue between the LIO and the greater offense. 9 M.J. 811, 813-18 (N.C.M.R. 1980), *aff'd*, 11 M.J. 36 (C.M.A. 1981). In that case, the appellant was charged with murder for shooting another in violation of Article 118, UCMJ. It was uncontroverted that the appellant shot the victim and that the victim died as a result. The only contested element was the lawfulness of the appellant's use of force insomuch as the appellant argued that he acted in self-defense. Nonetheless, the military judge instructed the panel, over defense objection, on the LIO of assault in which grievous bodily injury was intentionally inflicted.

We reiterated that "[an LIO] instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the [LIO]," and that "Due Process commands that an accused be tried, and the jury instructed, on the facts as disclosed in the record." *Id*. at 814. Determining there was no "reasonable interpretation of the evidence which would rationally support instruction upon [the LIO]" since there was "no reasonable 'disputed factual element' between that required to prove the . . . offense of which appellant could rationally be found guilty . . . and the lesser offense of which the members were advised," we set aside the appellant's assault conviction and dismissed the charge. *Id*. at 817.

So too here. The act of penetration, which the Government argues distinguishes the greater and lesser included offenses, was never in dispute. LCpl D testified only that she woke up once the appellant had penetrated her vagina with his penis. Whether the appellant merely "touched," as opposed to "penetrated," LCpl D's vagina was simply not raised. As a result, the only factual issue in dispute was the credibility of LCpl D's allegation.

Nonetheless, the Government now argues that the members may "choose to believe or disbelieve some or all of any part of a witness' testimony" and were free to conclude that "the [a]ppellant indeed touched LCpl [D's] vagina, but had not fully penetrated it with his penis."[15] However, this contention disregards LCpl D's clear and uncontested trial testimony:

Q: What is the next thing you remember?
A: Waking up with Hackler on top of me and his penis inside of me.

Q: And you say 'penis inside of you' are you talking about inside of your vagina?
A: Yes.

Q: Are you sure that is what you are feeling at the time?
A: Yes.[16]

Additionally, even if the members chose to partially disbelieve LCpl D's uncontested testimony regarding penetration, an issue is not disputed merely because the fact finder is free to disbelieve such testimony. *Jackson,* 12 M.J. at 167. While a victim's credibility will be an issue

---

[15] Government's Answer to Specified Issue at 8, 10.

[16] Record at 358-59.

in nearly every sexual assault case, credibility alone is not enough to place a matter "in dispute." Instead, a party must present some evidence which "reasonably raises" the LIO. This evidence may come from any source, but it must be sufficient that a factfinder could rationally conclude from it that an LIO was committed. *Id*. Here, there is no such evidence.

We remain committed to the independent duty of the military judge to "scrutinize the evidence . . . with great care . . . to ensure that the evidence will rationally support the lesser offenses in view of and as distinguished from the greater offense." *Waldron,* 9 M.J. at 818. On this record, we hold that the LIO of battery, purportedly distinguished by whether penetration occurred, was not reasonably raised by the evidence, and the appellant was prejudiced by the LIO conviction.

## B. Factual Sufficiency of Adultery Conviction

We disagree with the appellant's argument that his adultery conviction is legally and factually insufficient since the Government failed to produce evidence that his adulterous conduct was prejudicial to good order and discipline. To convict the appellant of adultery, the members were instructed that they must be satisfied beyond a reasonable doubt that, *inter alia*, the conduct of the appellant was to the prejudice of good order and discipline in the armed forces.[17] The military judge instructed the members that "conduct prejudicial of good order and discipline" was "conduct which causes a reasonably direct and obvious injury to good order and discipline. . . . To constitute an offense, the government must prove, beyond a reasonable doubt, that the [appellant's] adultery was directly prejudicial to good order and discipline. Conduct prejudicial to good order and discipline includes adultery that has an obvious and measurably divisive effect on the discipline, morale, or cohesion of a military unit or organization[.]"[18]

We find sufficient evidence for the trier of fact and for us to conclude that the appellant's actions were prejudicial of good order and discipline. LCpl D testified that she and the appellant were in the same platoon, the appellant's misconduct impacted the camaraderie of the platoon and hindered her ability to perform her duties, and she became introverted and withdrawn while at work.

## C. Equal Protection Challenge to Adultery Conviction

Next, the appellant challenges his adultery conviction as an "equal protection violation," arguing that adultery charged under Article 134, UCMJ exposes service members in opposite-sex marriages to a harsher punishment than it does to those in a same-sex marriage. The appellant also asserts third party standing to challenge the statute on grounds that it "den[ies] homosexuals marriage on the same terms and conditions" as heterosexuals.[19] The Government responds that,

---

[17] *Id*. at 446-47. In response to a defense motion to dismiss under R.C.M. 917, the military judge dismissed that portion of the adultery specification that alleged the appellant's conduct was "of a nature to bring discredit upon the armed forces." *Id*. at 425.

[18] *Id*. at 446-47.

[19] Appellant's Supplemental Brief filed on 30 Oct 2015 at 12 (citing *Obergefell v. Hodges*, 135 S. Ct. 2584, 2605 (2015)).

since "sexual intercourse" may be defined so as to include sodomy, the two groups are not treated differently and that the appellant lacks third-party standing.

Since the appellant raises this challenge for the first time on appeal, we review for plain error, *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013), requiring the appellant to establish that there was error, that the error was plain and obvious, and that the error materially prejudiced his substantial rights, *United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011). In conducting our plain error review, we review the constitutionality of this offense *de novo*. *Goings*, 72 M.J. at 205.

The Fourteenth Amendment provides that "[n]o state shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This principle is made applicable to federal government action through the due process clause of the Fifth Amendment. *Vance v. Bradley*, 440 U.S. 93, 95 n.1 (1979); *Hampton v. Mow Sun Wong*, 426 U.S. 88,100 (1976); *Frontiero v. Richardson*, 411 U.S. 677, 682 (1973); *Bolling v. Sharpe*, 347 U.S. 497 (1954); *see also United States v. Curtis*, 28 M.J. 1074, 1085 (N.M.C.M.R. 1989) (en banc) (*set aside and remanded on other grounds*, 33 M.J. 101 (C.M.A. 1991). The constitutional guarantee of equal protection is "generally designed to ensure that the Government treats 'similar persons in a similar manner.'" *United States v. Gray*, 51 M.J. 1, 22 (C.A.A.F. 1999) (citing R. ROTUNDA AND J. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE, 2d § 18.38 at 488; § 18:41 at 496 (1992)); *see also Plyler v. Doe*, 457 U.S. 202, 216 (1982) (stating the guarantee of equal protection directs that "all persons similarly circumstanced shall be treated alike") (citation and internal quotation marks omitted). Once properly raised, courts apply the requisite level of scrutiny to determine whether disparate treatment complies with the protections afforded the appellant by the constitutional principles of equal protection. However, the appellant must first establish that he was treated differently than persons "similarly circumstanced." *See e.g.*, *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *Arnold v. City of Columbia*, 197 F.3d 1217, 1220 (8th Cir. 1999) ("To prove their equal protection claim, appellants were required, as a threshold matter, to demonstrate that they were treated differently from others similarly situated to them.") (citation omitted); *United States v. Lecolst*, 4 M.J. 800, 801 (N.C.M.R. 1978). Here, the appellant has failed to meet this preliminary burden so our analysis begins and ends there.

**Discussion**

Assuming without deciding that service members in same-sex and opposite-sex marriages are similarly situated insofar as they are members of legal marriages, we turn to the appellant's threshold burden of showing that adultery, charged under Article 134, treats him differently.

The appellant argues that adultery does not apply to service members with same-sex spouses because the offense requires "sexual intercourse," which he claims is defined such that only members of the opposite sex may perform the act.[20] As a result, the appellant claims

---

[20] Sexual intercourse is not expressly defined within the Manual for Courts-Martial. However, in practice, which includes application of the term under Article 120 before and since its removal as a discrete element of rape offenses committed after 1 October 2007, and as reflected in the Military Judges' Benchbook, military courts have defined sexual intercourse as "any penetration, however slight, of the female sex organ by the penis." Military Judges'

service members who engage in wrongful, extramarital sexual conduct which would otherwise violate adultery if that conduct were sexual intercourse, are subject only to a lesser maximum punishment of a general disorder for essentially the same offense.[21]

This notion, however, fails to consider fully the scope of Article 134, which proscribes all "disorders and neglects to the prejudice of good order and discipline in the armed forces, [and] conduct of a nature to bring discredit upon the armed forces." *Parker v. Levy*, 417 U.S. 733, 738 n.4 (1974) (citing 10 U.S.C. § 934). "[C]onsonant with his authority to act as commander-in-chief and his duty to 'take care that the laws be faithfully executed,' U.S. Const. art. II, §§ 2-3," *Goings*, 72 M.J. at 206, the President has listed several "ways in which Article 134, UCMJ, might be charged," *United States v. Jones*, 68 M.J. 465, 472 (C.A.A.F. 2010). In doing so, the President does not create a substantive criminal offense, but simply provides "guidance to judge advocates under his command regarding potential violations of the article" by "merely indicating various circumstances in which the elements of Article 134, UCMJ could be met." *Jones,* 68 M.J. at 471-72; *United States v. Fosler*, 70 M.J. 225, 231 (C.A.A.F. 2011) ("[T]he President does not have the authority to decide questions of substantive criminal law."). Adultery is but one such circumstance.

However, the Presidents listing one example does not preclude charging similar conduct under Article 134. In fact, any service member may be charged with a sexual act that violates Article 134's terminal element, provided the alleged conduct is not preempted (*see* MCM pt. IV, ¶ 60c(5)(a); *United States v. Anderson*, 68 M.J. 378, 386-87 (C.A.A.F. 2010)), and the notice requirement is satisfied (*United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003). *See*, MCM Part IV, ¶ 60c.(6)(c)("if conduct by an accused does not fall under any of the listed offenses . . . a specification not listed in this Manual may be used to allege the offense"); *United States v. Warner*, 73 M.J. 1, 3 (C.A.A.F. 2013) ("It is settled that a service member may be prosecuted for . . . conduct even if the conduct is not specifically listed in the [MCM]," since the "first and second clauses of Article 134, UCMJ, permit the criminalization of certain conduct not otherwise prohibited[.]"). Therefore, contrary to the appellant's position, Article 134 does not limit charging service members in same-sex marriages who engage in extramarital sexual infidelity prejudicial of good order and discipline or of a nature to be service discrediting with a general disorder violation.

Nor is adultery's maximum punishment limited to service members in opposite-sex marriages. Article 56, UCMJ, provides: "[t]he punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense." In R.C.M. 1003(c), the President provides the relevant guidance on those limits, noting that the maximum punishment for each listed offense is "set forth for each offense." R.C.M.

Benchbook, Dept. of the Army, Pamphlet. 27-9, ¶¶ 3-45-1 (Rape) and 3-62-1 (Adultery) (Jan 2016). We decline the Government's invitation to unnecessarily redefine this term so as to include acts still proscribed as sodomy under certain circumstances under Article 125 and reflected as separate from sexual intercourse in various Article 134 provisions. *See* MCM, Part IV, ¶¶ 68bc(7)(a) and 97b(1)-(4) and c.

[21] The maximum punishment for "general disorders" under Article 134 is confinement for four months and no punitive discharge. MCM, App. 12; *see also United States v. Beaty*, 70 M.J. 39, 45 (C.A.A.F. 2011).

1003(c)(1)(A)(i). An adultery conviction carries a maximum punishment of confinement for one year, total forfeitures, and a dishonorable discharge. MCM, Part IV, ¶ 62(e). For an offense not listed, the maximum punishment is the same as any "closely related" offense listed elsewhere in Part IV, if one exists. R.C.M. 1003(c)(1)(B)(i). *See also United States v. Bivins*, 49 M.J. 328, 332 (C.A.A.F. 1998) (finding the appellant can be prosecuted for a novel offense under Article 134 and subject to the maximum punishment for the most closely related offense listed in Article 134.); *United States v. Ettleson*, 13 M.J. 348, 367 (C.M.A. 1982) (observing that even if the court adopted a different interpretation of a term in a listed offense, it would result in a "closely-related" offense subject to the same maximum punishment.). We compare the elements of the offenses in question to determine if they are "closely-related." *United States v. Busch*, 75 M.J. 87 (C.A.A.F. 2016).

Considering the scope of Article 134 and the mechanics of R.C.M. 1003(c)(1)(B)(i), the appellant has not established that the maximum punishment he faced for his adultery conviction would necessarily be different than that faced by any service member who committed similar extramarital conduct, including marital infidelity involving oral or anal sex. This is especially so if the factors that the President listed as relevant to determining whether adulterous conduct is prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces were used in the process. *See* MCM, Part IV, ¶ 62(c)(2). Thus, he has failed to establish error.[22]

## D. Sentence Reassessment

Having set aside the appellant's conviction for battery, we must next determine whether we are able to reassess his sentence. Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error; and the demands of Article 59(a) will be met." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure; the forum; whether the remaining offenses capture the gravamen of the criminal conduct; whether significant or aggravating circumstances remain admissible and relevant, and; whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013).

As aggravation evidence, the TC offered the appellant's service record and LCpl D's impact testimony, which included the following: she was sectioned off since raising the allegations and unable to work within her occupational specialty, including deployment training, resulting in her inability to deploy; she was diagnosed with Post Traumatic Stress Disorder, attended mental health appointments every two weeks, and was prescribed anti-depressants as a result of the appellant's misconduct; and many of the Marines in her platoon "took [the appellant's side] and thus made it hard for her to "make friends" or do her job.[23] Conversely, the

---

[22] Our resolution of this AOE moots the appellant's third party standing claim.

[23] Record at 499.

defense established that LCpl D continued to engage in communication with the appellant after the incident; was pregnant (and so ineligible to deploy) "within a couple of months" afterwards; and remained actively engaged in social activities with other Marines.[24]

This court has "broad discretion" when reassessing sentences. *Id. at* 12. The maximum punishment for the now-dismissed battery conviction was six months of confinement, while the maximum confinement for adultery is 12 months. While the adultery charge may not capture the "gravamen" of the original allegations, the members opted to award the appellant no confinement at all. Well-familiar with the range of sentences awarded for adultery, we can determine to our satisfaction that, absent the battery conviction, the sentence adjudged would have been of at least a certain severity.

## E. Error in Convening Authority's Action

The results of trial, the staff judge advocate's recommendation, and the convening authority's action all fail to reflect that the military judge dismissed the language "and of a nature to bring discredit upon the armed forces" from the adultery specification.[25] We test these plain errors under a harmless-error standard. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998). The appellant alleges no prejudice resulting from the errors and we find none. However, the appellant is entitled to accurate court-martial records. *Id*.

### Conclusion

The appellant's conviction on Specification 3 of Charge I for assault consummated by a battery is set aside. Charge I and Specification 3 thereunder are dismissed with prejudice. The remaining finding and only so much of the sentence as provides for reduction to pay grade E-1 are affirmed. The supplemental promulgating order shall reflect that the military judge dismissed the language "and of a nature to bring discredit upon the armed forces" from the Specification of Charge II.

Chief Judge BRUBAKER, Senior Judge FISCHER, Judge MARKS, Judge RUGH, Judge PALMER, and Judge CAMPBELL concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[24] *Id*. at 511-12.

[25] *Id*. at 426.