# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**D.C. KING, A.Y. MARKS, B.T. PALMER**
Appellate Military Judges

### UNITED STATES OF AMERICA

v.

### BRIAN S. JOHNSON
### STAFF SERGEANT (E-6), U.S. MARINE CORPS

### NMCCA 201500196
### SPECIAL COURT-MARTIAL

**Sentence Adjudged:** 5 March 2015.
**Military Judge:** LtCol E.H. Robinson, Jr., USMC.
**Convening Authority:** Commanding Officer, Recruit Training Regiment, Marine Corps Recruit Depot, San Diego, CA.
**Staff Judge Advocate's Recommendation:** Maj B.M. Wilson, USMC.
**For Appellant:** CDR Ricardo A. Berry, JAGC, USN.
**For Appellee:** LT Jetti L. Gibson, JAGC, USN; Capt Cory A. Carver, USMC.

**28 April 2016**

---------------------------------------------------
### OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of three specifications of violating a general order against fraternization, three specifications of violating a general order against sexual harassment, one specification of dereliction of duty, one specification of violating a general order regarding uniform regulations, and one specification of adultery, in violation of Articles 92 and 134, Uniform Code of Military J, 10 U.S.C. §§ 892, 934 (2012). The military judge sentenced appellant to 12 months of confinement, reduction to pay grade E-1, and a reprimand. The convening authority approved

the sentence as adjudged and, pursuant to a pretrial agreement, suspended confinement in excess of six months.

The appellant asserts three assignments of error: (1) it was an unreasonable multiplication of charges to charge separate specifications of fraternization and sexual harassment for essentially the same course of conduct; (2) the appellant's acts of sending digital images of himself wearing his uniform, with his penis exposed to individuals who solicited the images, does not constitute appearing at an event in public; and (3) recent legal and factual developments require setting aside appellant's conviction for adultery under Article 134 as a violation of equal protection. We disagree and affirm the approved findings and sentence.

## Background

The appellant, a married Marine with three years' time-in-grade as a Staff Sergeant, was the S-6 Communications Electronics Maintenance Chief for a squadron at Marine Corps Air Ground Combat Center, Twentynine Palms, California. Among the Marines the appellant supervised were three subordinate females, Corporal (Cpl) R, Cpl T, and Lance Corporal (LCpl) J. The appellant's three convictions for fraternization and three convictions for sexual harassment involved these three Marines. In July 2012, when each reported to the squadron, the appellant met with them one-on-one in his office.

### Cpl R

During their initial meeting, the appellant asked then-Private First Class (PFC) R whether she was on birth control and what method of birth control she used. Later, in the S-6 workspaces, the appellant made inappropriate sexual jokes and comments around Cpl R and warned her and other female Marines to ensure their faces were not in any nude photographs they transmitted over the internet.

After Cpl R contacted the appellant for career advice in the fall of 2013, the appellant texted her a photograph of a naked woman from the internet and claimed it was Cpl R. Cpl R responded she was not the woman in the photo because that woman did not have tattoos. At the appellant's request, Cpl R sent him photos of her tattoos, normally hidden by her uniform. The appellant replied with sexually suggestive comments. Later, he sent Cpl R photos of his erect penis until she told him to stop.

### Cpl T

When the appellant first met Cpl T, then a PFC, he asked her what kind of alcohol she liked, whether she was on birth control, and if she had a boyfriend. Cpl T eventually responded to the appellant's overtures by confiding in him about her boyfriend. The appellant began sending Cpl T personal text messages that began as words of encouragement but turned flirtatious and sexual in nature. The appellant would text Cpl T nearly every day, telling her she was beautiful and that he wished they could be together.

2

Responding to the appellant's requests to see her naked during a barracks inspection, Cpl T undressed to her underwear. The appellant kissed her but went no further when she told him to stop. The relationship progressed as the appellant regularly met with Cpl T alone in his office, ending every interaction by hugging and kissing her.

One night when the appellant stood duty in the barracks, he visited Cpl T in her room. He removed his uniform, belt, weapon, and duty arm band and had sexual intercourse with her. Afterward, the appellant sent Cpl T photos of his erect penis and a sexually explicit video of himself. He found a pre-enlistment photo of Cpl T online and sent it to her, asking if it were she.

The appellant and Cpl T traveled to Marine Corps Air Station Miramar in Cpl T's personal vehicle to pick up equipment. During the trip, the appellant took Cpl T to the Marine Corps Exchange, bought her a pair of shoes, and treated her to a meal at a restaurant. On another occasion, the appellant signed Cpl T out on special liberty. Together they shopped, visited an art gallery, and had lunch.

### LCpl J

After meeting LCpl J, the appellant suggested they speak to each other on a first name basis, as if they were friends. He would approach LCpl J for a "'this is Brian to [LCpl J's first name] . . . not Staff Sergeant to Lance Corporal' conversation or 'this is a Brian to a friend' conversation."[1] He would invite LCpl J into his office to talk alone, close the door, and sometimes lock it.

Eventually, the appellant began to comment on LCpl J's physical appearance during the meetings. When he first saw LCpl J without her uniform blouse he remarked about the size of her breasts. The appellant continued to comment on LCpl J's breasts and on one occasion, wrapped his fingers around her wrist and commented on how small she was in comparison to her breasts. He also showed LCpl J a photo of himself in a bathing suit.

### Photographs in Uniform

In July 2013, the appellant transferred to the drill instructor school at Marine Corps Recruit Depot San Diego, California. Around the same time, he began visiting the Craigslist website and responding to posts from people interested in "casual encounters."[2] Using an anonymous messaging application, the appellant sent approximately 89 sexually explicit photographs of himself, in uniform, to approximately 24 individuals he met via Craigslist.

---

[1] Record at 34; Prosecution Exhibit 1 at 2.

[2] Record at 44.

**Discussion**

*1.  Unreasonable Multiplication of Charges*

For the first time on appeal, the appellant alleges that his convictions for fraternization and sexual harassment constitute an unreasonable multiplication of charges.

It is within our authority under Article 66(c), UCMJ, "to consider all claims of unreasonable multiplication of charges, even if raised for the first time on appeal, and to consider waiver only 'if an accused affirmatively, knowingly, and voluntarily relinquishes the issue at trial . . . .'" *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001) (quoting *United States v. Quiroz*, 53 M.J. 600, 606 (N-M. Ct. Crim. App. 2000). The appellant did not explicitly waive motions in his pretrial agreement.[3] When the military judge asked the trial defense counsel if he had any motions prior to arraignment, he replied, "[n]o, sir."[4] No one discussed unreasonable multiplication of charges on the record. Absent an affirmative waiver of the issue in the record, we will consider it here.

The concept of unreasonable multiplication of charges stems from RULE FOR COURTS-MARTIAL 307(c)(4) and the admonition that, "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). The well-established *Quiroz* factors guide us in evaluating the reasonableness of charges: "(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?; (2) Is each charge and specification aimed at distinctly separate criminal acts?; (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?; (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and, (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?" *Quiroz*, 55 M.J. at 338 (quoting *Quiroz*, 53 M.J. at 607) (internal quotation marks omitted).

The appellant argues that the conduct that formed the basis for his fraternization convictions is "inextricably intertwined with the conduct that comprises sexual harassment."[5] Since the Stipulation of Fact and the providence inquiry do rely on many of the same incidents as proof of both fraternization and sexual harassment, we will examine the multiple specifications through the *Quiroz* lens.

> (1)  As previously stated, the appellant did not raise an objection for unreasonable multiplication of charges at trial. This factor weighs in the Government's favor.

---

[3] Appellate Exhibit II.

[4] Record at 14.

[5] Appellant's Brief and Assignments of Error of 23 Sep 2015 at 8.

(2)    The appellant faced one specification each of fraternization with and sexual harassment of three subordinate Marines in his squadron.  Fraternization includes "personal relationships between . . . enlisted members that are unduly familiar[,] . . . that do not respect differences in grade or rank[,]" and that are "prejudicial to good order and discipline or of a nature to bring discredit on the naval service[.]"[6]  The prejudice to good order and discipline may stem from "circumstances which – a. call into question a senior's objectivity; b. result in actual or apparent preferential treatment; c. undermine the authority of a senior; or d. compromise the chain of command."[7]  The unduly familiar relationships that constitute fraternization need not be sexual in nature, but they invariably threaten a unit's good order and discipline by creating an appearance of favoritism in the chain of command.  On the other hand, sexual harassment as prohibited in Marine Corps Order 1000.9A, is inherently sexual in nature and is characterized by discrimination against, instead of favoritism toward, an individual: "Sexual harassment is a form of discrimination that involves unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . ."[8]  A victim of sexual harassment may face submission to sexual advances as a condition of employment or promotion, or a hostile work environment.[9]

Over the course of months, the appellant established unduly familiar relationships with junior female Marines reporting to his squadron and separately made unwanted sexual advances toward them.  Conversations between supervisor and subordinate on a first name basis and behind closed doors, the exchange of personal text messages, and day trips with shopping and lunch were not necessarily sexual, but cultivated unduly familiar relationships likely to create an appearance of favoritism.  Sometimes the unduly familiar relationships facilitated sexual contact or the transmission of sexually explicit photos.  However, no relationship was necessary for unwanted sexual advances.  Personal questions about birth control and boyfriends occurred during in-calls before a relationship existed.  Inappropriate jokes and comments made in the S-6 shop created a hostile work environment, but did not require an unduly familiar relationship or create an appearance of favoritism.  The evidence revealed a pattern of behavior toward each victim, made up of numerous transactions.  While many transactions provided evidence of both fraternization and sexual harassment, each specification addresses a distinctly separate criminal act.  This second factor supports the Government's position.

(3)    Single specifications of fraternization and sexual harassment address the differences in the nature and impact of the appellant's actions toward his three female subordinates over months without exaggerating his criminality.  Incidents

---

[6] United States Navy Regulations, Change 1, article 1165, ¶ 2, 14 Sep 90.

[7] Id.

[8] Marine Corps Order 1000.9A, Sexual Harassment, ¶ 4.c.(1), 30 May 06.

[9] Id.

of sexual harassment were numerous enough to support more specifications than were actually referred. This factor also favors the Government.

(4)    A single specification of a violation of a general order carries a maximum penalty beyond what the appellant faced at a special court-martial. Therefore there was no increase in the appellant's punitive exposure, much less an unreasonable one. This factor favors the Government.

(5)    Finally, finding distinct criminal acts support each specification, we find no evidence of prosecutorial overreaching or abuse in the drafting of the charges.

None of the five *Quiroz* factors supports the appellant's contention that the specifications of fraternization and sexual harassment constitute an unreasonable multiplication of charges. Thus, we find no error.

## 2. *Violation of Marine Corps Uniform Regulations*

The appellant challenges his conviction for violating the Marine Corps Uniform Regulations, which prohibit "[a]ppearing or participating in any event in public that would compromise the dignity of the uniform."[10]

"[W]e review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea *de novo*. In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

For the first time on appeal, the appellant claims that sending photographs of himself exposed in uniform to members of the general public did not constitute appearing "in an event in public" and thus did not violate the order.[11] We agree with the appellant that we should construe punitive orders strictly,[12] as we would construe a penal statute. *United States v. Scott*, 46 C.M.R. 25, 28 (C.M.A. 1972). However, we do not construe criminal statutes so strictly as to frustrate their drafters' intent. *United States v. Craig*, 67 M.J. 742, 746 (N-M. Ct. Crim. App. 2009) ("'The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. [However]' . . . they are not to be construed so strictly as to defeat the obvious intention of the legislature.'" (alterations in original) (quoting *United States v. Wiltberger*, 18 U.S. 76 (1820)). *See also United States v. Duke*, 37 C.M.R. 80, 84 (C.M.A. 1966); *United States v. Rowe*, 32 C.M.R. 302, 311 (C.M.A. 1962). Here, the intent of the order is clear: "The purpose of this policy is to ensure Marines present the best possible image at all times and continue to lead the way in military presence."[13] "Any activity which detracts from the dignified appearance

---

[10] Marine Corps Order P1020.34G w/Ch 1-5, ¶ 1003, 31 Mar 03.

[11] Appellant's Brief at 5-6.

[12] "Chapter 1 of these regulations is a punitive order." MCO P1020.34G w/Ch 1-5, ¶ 1000.9.

[13] *Id.* ¶ 1000.6.c.

of Marines, [sic] is unacceptable."[14]  The Marine Corps Uniform Regulations also explicitly incorporate the Department of Defense regulation which prohibits wearing the uniform "when [it] would tend to bring discredit upon the Armed Forces."[15]

The appellant admitted to exposing himself, while in uniform, on 24 occasions, memorializing those exposures in digital images that also displayed his uniform, and forwarding those images to strangers.  The evidence showed he invited at least one recipient to share the photos with other strangers.[16]  In a Stipulation of Fact and during the providence inquiry, the appellant admitted that these actions brought discredit upon the armed forces and disrespected the dignity and professionalism of the uniform, in violation of the Marine Corps Uniform Regulations and the Department of Defense regulation they incorporate.  On the limited facts of this guilty plea, we decline to find a substantial question of law or fact that would indicate the military judge abused his discretion.

### 3.  *Equal Protection Challenge*

The appellant also challenges his adultery conviction, arguing that it denied him the equal protection of the law in violation of the Due Process clause of the Fifth Amendment to the United States Constitution.  In accordance with our holding in *United States v. Hackler*, __ M.J. __, 2016 CCA LEXIS 168 (N-M. Ct. Crim. App. 2016), we summarily reject this assigned error.

**Conclusion**

The findings and the sentence are affirmed.

For the Court



R.H. TROIDL
Clerk of Court

---

[14] *Id.* ¶ 1000.6.a.

[15] *Id.* ¶ 11002.1.a(4) (following DoDI 1334.01, Wearing of the Uniform, ¶ 3.1.4, 26 Oct 2005, the current regulation in the series that began with DoDD 1334.1, Wearing of the Uniform, 11 Aug 1969).

[16] "Anything I send u, u can post if u want, or just have it for ur own use."  PE 4 at 1.