# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, J.A. FISCHER, A.C. RUGH**
**Appellate Military Judges**

## UNITED STATES OF AMERICA

v.

## EDGAR A. VALLADARES-GARCIA
## GUNNERY SERGEANT (E-7), U.S. MARINE CORPS

### NMCCA 201500155
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 16 January 2015.
**Military Judge:** Col D.J. Daugherty, USMC.
**Convening Authority:** Commanding General, 3d Marine Logistics Group, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** Capt R.J. Russell, USMC.
**For Appellant:** LT Rachel Weidemann, JAGC, USN.
**For Appellee:** LCDR Justin Henderson, JAGC, USN; Capt Matthew Harris, USMC.

**16 June 2016**

---------------------------------------------------
### OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

RUGH, Judge:

A panel of members with enlisted representation, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of making a false official statement, sodomy, and adultery in violation of Articles 107, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 925, and 934. The members sentenced the appellant to two years' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a bad-conduct discharge, and the convening authority approved the sentence.

The appellant now raises three assignments of error (AOE): (1) that the consensual sodomy specification fails to allege a factor identified in *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004); (2) that his adultery conviction was legally and factually insufficient; and (3) that his adultery conviction denied him the equal protection of the law in violation of the Due Process clause of the Fifth Amendment to the United States Constitution. In addition, we specified the following issue: whether the sentence was appropriate.

Having carefully considered the record of trial, the pleadings, and oral argument on the first and second AOEs, we disagree with each assigned error. However, we find the sentence inappropriately severe and reassess below.

## BACKGROUND

In September 2013, the appellant and Staff Sergeant (SSgt) Smith[1] worked in the same company as food service specialists supporting Marine Corps bases located in Okinawa, Japan.[2] Additionally, they had a passing social relationship—the appellant previously attended a party at SSgt Smith's house and communicated online with SSgt Smith's wife, Mrs. Smith. SSgt and Mrs. Smith lived on board Camp Kinser, Okinawa, where Mrs. Smith worked as a civilian employee.

On 20 September 2013, SSgt and Mrs. Smith walked to an on-base bar to watch a comedy show, where they were joined by another couple as well as by the appellant and Corporal (Cpl) Jones, a male Marine who worked for the appellant. Afterwards, SSgt Smith decided to return home, but Mrs. Smith stayed behind with the group who by then began downing shots of alcohol. She remained there for the next hour, sitting next to and engaging with the appellant in a manner observed by Cpl Jones as, "It just didn't seem like a married woman should be acting like that with another man."[3]

At the end of the hour, Cpl Jones watched the appellant and Mrs. Smith leaving together. Curious as to where the appellant was going, Cpl Jones tried to reach the appellant by phone, but the appellant never answered.

Instead, the appellant and Mrs. Smith returned to the appellant's room where the appellant engaged in oral sodomy with Mrs. Smith. Next, Mrs. Smith recalled waking up completely naked. Her vaginal area was now sore and felt uncomfortable, "like [she] had sex."[4] Subsequent forensic analysis disclosed Mrs. Smith's DNA on the interior crotch of two pairs of the appellant's underwear. Analysis also disclosed DNA from Mrs. Smith's underwear that included Mrs. Smith and two other people at least one of whom was male.

---

[1] The names of persons mentioned in this opinion are pseudonyms.

[2] At the time of the offenses, the appellant was a Gunnery Sergeant (GySgt), pay grade E-7, while SSgt Smith was in pay grade E-6.

[3] Record at 274.

[4] *Id.* at 319.

Separate from this incident, in March 2014, the appellant altered a physical fitness test (PFT)/combat fitness test (CFT) performance worksheet to falsely indicate his successful completion of the annual PFT/CFT cycle.

## DISCUSSION

**Deficient Sodomy Specification**

The appellant was initially charged with two specifications of sexual assault involving the oral sodomy and sexual intercourse with Mrs. Smith. In the alternative, the Government alleged consensual sodomy and adultery. The consensual sodomy specification alleged:

> In that [the appellant], U.S. Marine Corps, did, onboard Camp Kinser, Okinawa, Japan, between on or about 20 September 2013 and on or about 21 September 2013, commit sodomy with [Mrs. Smith].

During the court-martial, the parties focused primarily on the allegations of non-consensual sexual assault against Mrs. Smith and a separate alleged victim. However, SSgt Smith, Mrs. Smith, and Cpl Jones each testified about the nature of the appellant's professional and personal relationships with the group. During closing argument, trial counsel highlighted the significance of this evidence:

> Adultery and sodomy are illegal because of our unique military environment. Because when those acts are prejudicial to good order and discipline, we have to hold people accountable. . . . Think about the impact that type of act is going to have on you when a gunnery sergeant is doing something like that to a subordinate's wife.[5]

Prior to closing argument, the military judge instructed the members on the offense of consensual sodomy:

> Not every act of adult consensual sodomy is a crime. Adult consensual sodomy is a crime only if you find beyond a reasonable doubt that the sodomy alleged occurred and involved persons who might be injured or implicates a unique military interest. In determining whether the alleged sodomy in this case implicates a unique military interest, you should consider all the facts and circumstances offered on that issue including the following, but not limited to the following: The accused's marital status; military rank, grade, or position; [Mrs. Smith's] position and relationship to the Armed Forces; whether the sodomy occurred while [the appellant] was on or off duty; the impact, if any, of the sodomy on the ability of [the appellant], the co-actor, or the spouse of either to perform their duties in support of the Armed Forces; the misuse, if any, of ant government time and resources to facilitate the commission of the sodomy; and the impact of the sodomy, if any, on the units or organizations of the [appellant], the co-actor, or the spouse oe either of them, such as a detrimental effect on a unit or organization, morale, teamwork, or efficiency; where the sodomy occurred; who may have know[n] of the sodomy; [and] the nature, [i]f any, of the official

---

[5] *Id.* at 610.

and/or personal relationship between [the appellant] and the spouse of [Mrs. Smith].[6]

The appellant did not object to this instruction or to the specification as defective.

When a defective specification is raised for the first time on appeal, the issue is forfeited in the absence of plain error. *United States v. Humphries*, 71 M.J. 209, 213 (C.A.A.F. 2012); *see also United States v. Tunstall*, 72 M.J. 191, 196-97 (C.A.A.F. 2013) (noting that when an appellant fails to object to a specification at trial for its failure to state an offense, an appellate court reviews the claim on appeal for plain error).

To establish plain error, the appellant has the burden to demonstrate: "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused." *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011) (citing *United States v. Powell*, 49 M.J.460, 463-65 (C.A.A.F. 1998)).

*Was there error?*

In *Marcum*, 60 M.J. at 206, the Court of Appeals for the Armed Forces (CAAF) adopted a framework to determine whether Article 125, UCMJ, is constitutional as applied to the facts of a given case: First, was the conduct of the accused of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any factors identified by the Supreme Court as outside the analysis in *Lawrence v. Texas,* 539 U.S. 558 (2003)? "For instance, did the conduct involve minors? Did it involve public conduct or prostitution? Did it involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused?" *Marcum,* 60 M.J. at 207 (citation omitted). Finally, "are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?" *Id.*

In *United States v. Castellano*, 72 M.J. 217, 218-19 (C.A.A.F. 2013), the CAAF further expounded that the existence of an additional "*Marcum* factor" must be determined by the trier of fact. Most recently in *United States v. Bass*, 74 M.J. 806, 812 (N.M.Ct.Crim.App. 2015), this court stated that these "*Marcum* factors" must be pleaded in a specification. *See also United States v. Woodye*, No. 201400336, 2015 CCA LEXIS 354, at *10, unpublished op. (N.M Ct.Crim.App. 27 Aug. 2015) (applying the precedent of *Bass* to require pleading of a "*Marcum* factor" in the specification). We adhere to that precedent today.

*Was the error plain or obvious?*

In *Bass*, we unequivocally held that "[t]he CAAF's binding interpretation that *Marcum* factors represent additional facts necessary to prove a criminal act of sodomy . . . constrains us to conclude that, as a result, they must be pleaded in a sodomy specification." 74 M.J. at 812. Since *Bass* was the law at the time of appeal, we find the error was plain. *See United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008) (the court considers "whether the error is obvious at

---

[6] *Id*. at 595.

4

the time of appeal, not whether it was obvious at the time of the court-martial.")

*Did the error materially prejudice a substantial right of the appellant?*

"The error here—that [the appellant] in a contested case, was charged with and convicted of a specification that failed to allege an element of the offense charged—implicates [the appellant's] substantial right to notice under the Fifth and Sixth Amendments." *Humphries*, 71 M.J. at 215 (citation omitted). Still, a defective specification is "not subject to automatic dismissal, even though it affects constitutional rights. . . . Rather, this Court tests for prejudice." *United States v. Wilkins*, 71 M.J. 410, 413 (C.A.A.F. 2012) (citations omitted).

To establish whether there is prejudice, "we look to the record to determine whether notice of the missing element is somewhere extant in the trial record," *Humphries*, 71 M.J. at 215-16, or whether evidence of the missing element is "overwhelming and essentially uncontroverted." *United States v. Cotton*, 535 U.S. 625, 633 (2002) (internal quotation marks omitted) (holding that because of overwhelming evidence, an omission from an indictment did not lead to an error seriously affecting the fairness, integrity or public reputation of the judicial proceeding). If either is the case, the charging error is considered cured and material prejudice is not demonstrated. *Woodye*, 2015 CCA LEXIS 354, at *10-11.

Under the unique circumstances of this case, in which the allegation of adultery was so closely related to the consensual sodomy in time, nature, co-actor, and military interest, then notice of a "*Marcum* factor"—that the consensual sodomy affected a unique military interest in that it was prejudicial to good order and discipline and service discrediting—existed sufficiently in the record of trial to place the appellant on notice of the Government's theory. Conversely missing from the record is any mention of other potential "*Marcum* factors," including sodomy with minors, public conduct, prostitution, or coercion, which might have confused the appellant as to the Government's theory. Likewise, there is no indication that the appellant's theory of the case, witnesses called or argument would have differed in any way had the specification explicitly alleged a unique military interest. For these reasons, we find sufficient notice of the missing element exists in the record that the error did not seriously affect the fairness, integrity or public reputation of the court-martial.

Additionally, evidence of the military's unique interest in prohibiting consensual sodomy between the appellant and Mrs. Smith is overwhelming and uncontroverted. That the appellant was senior to SSgt Smith; that he and SSgt Smith worked in the same company; that he knew SSgt Smith and Mrs. Smith socially; that Mrs. Smith worked as a civilian employee on base; that Cpl Jones was directly supervised by the appellant; that Cpl Jones witnessed the appellant and Mrs. Smith, whom he knew was married to SSgt Smith, leaving together; and that some form of sexual activity occurred between the appellant and Mrs. Smith[7] was unrefuted at trial.

For these reasons, we find that the error did not materially prejudice a substantial right of the appellant.

---

[7] During closing argument to explain the presence of Mrs. Smith's DNA on the inside of appellant's underwear, defense counsel posited that sexual activity occurred while denying actual sexual intercourse. *Id.* at 620.

**Legal and Factual Sufficiency of the Adultery Conviction**

The appellant asserts the evidence is legally and factually insufficient to support the members' guilty findings as to adultery. Specifically, the appellant argues a lack of evidence proving sexual intercourse, that the evidence failed to demonstrate conduct prejudice to good order and discipline, and that the evidence failed to demonstrate conduct of a nature to bring discredit upon the Armed Forces. We disagree.

We review questions of factual and legal sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt." *United States v. Humphreys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). In weighing questions of legal sufficiency, the court is "bound to draw every reasonable inference from the evidence in the record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). The test for factual sufficiency is "whether after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Proof beyond a reasonable doubt does not mean, however, that "the evidence must be free from conflict." *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001) (citation omitted).

The members were instructed that to convict the appellant of adultery they must be satisfied beyond reasonable doubt that the appellant wrongfully had sexual intercourse with Mrs. Smith. The military judge defined sexual intercourse as "any penetration, however slight, of the female sex organ by the penis."[8]

The military judge also instructed the members that "conduct prejudicial of good order and discipline" or "of a nature to bring discredit upon the Armed Forces" includes:

> [A]dultery that has an obvious and measurably divisive effect on discipline, morale, or cohesiveness of a military unit or organization, or that has a clearly detrimental impact on the authority, stature, or esteem of a service member. Service discrediting contact includes adultery that has a tendency because of its open and notorious nature to bring the service into disrepute, to make it subject to public ridicule, or to lower it in public esteem.[9]

The President has provided additional, specific guidance on what may constitute "conduct prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces" in cases of alleged adultery:

> To constitute an offense under the UCMJ, the adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting.

---

[8] *Id.* at 596.

[9] *Id.*

6

Adulterous conduct that is directly prejudicial includes conduct that has an obvious, and measurably divisive effect on unit or organization discipline, morale, or cohesion, or is clearly detrimental to the authority or stature of or respect toward a servicemember. Adultery may also be service discrediting, even though the conduct is only indirectly or remotely prejudicial to good order and discipline. Discredit means to injure the reputation of the armed forces and includes adulterous conduct that has a tendency, because of its open or notorious nature, to bring the service into disrepute, make it subject to public ridicule, or lower it in public esteem. While adulterous conduct that is private and discreet in nature may not be service discrediting by this standard, under the circumstances, it may be determined to be conduct prejudicial to good order and discipline.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 62(c)(2).

Mrs. Smith was a civilian working on base and married to a junior co-worker of the appellant.  Mrs. Smith and SSgt Smith hosted the appellant and other Marine Corps members at their house.  And the appellant's and Mrs. Smith's flirtatious behavior as they left the on-base bar was observed and remarked upon by Cpl Jones, a junior Marine within the appellant's chain of command.  After engaging in oral sodomy with the appellant, Mrs. Smith testified that, on waking she experienced vaginal discomfort and soreness consistent with sexual intercourse, a feeling she did not have that evening prior to this moment.  Subsequently, her DNA—and not the appellant's DNA—was recovered from the interior crotch area of two pairs of underwear the appellant wore that evening.

This is sufficient evidence for the trier of fact and for us to conclude beyond reasonable doubt that the appellant engaged in sexual intercourse with Mrs. Smith, and that the appellant's actions were both directly prejudicial of good order and discipline and were service discrediting.

**Equal Protection Challenge to the Adultery Conviction**

In accordance with our holding in *United States v. Hackler*, 75 M.J. 648 (N.M.Ct.Crim.App. 2016), we summarily reject the assigned error.

**Sentence Appropriateness**

In accordance with Article 66(c), UCMJ, a military appellate court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."   Sentence appropriateness involves the function of assuring that justice is done and that the accused gets the punishment he deserves.  *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'"  *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

The appellant was sentenced to two years' confinement, reduction to the lowest pay grade, forfeiture of all pay and allowances, and a bad-conduct discharge for an adulterous affair lasting one evening and a false official statement regarding the PFT/CFT. Considering the nature and seriousness of the specific offenses committed and the appellant's individual characteristics, including the appellant's good military character and reputation for good character as reflected in the testimony of two Master Sergeants and his service record; the absence of prior convictions or nonjudicial punishment; his deployment to Afghanistan; his diagnosis with post-traumatic stress disorder and depression; and his enrollment in the Exceptional Family Members Program, we are convinced that the appellant's sentence to confinement was inappropriately severe.

## CONCLUSION

We conclude that the findings are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ. The findings and so much of the sentence as provides for 18 months' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a bad-conduct discharge are affirmed.

Chief Judge BRUBAKER and Senior Judge FISCHER concur.

For the Court



R.H. TROIDL
Clerk of Court